531 P.2d 1193

**The STATE of Idaho, Plaintiff-Respondent,**

v.

**Patrick Edward O'BRYAN, Defendant-Appellant.**

**No. 11232.**

Supreme Court of Idaho.

Feb. 20, 1975.

---

E. Don Copple, Davison, Copple & Copple, Boise, for defendant-appellant.

W. Anthony Park, Atty. Gen., Warren Felton, Asst. Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

Appellant Patrick Edward O'Bryan flew to California in February, 1972 to close a land transaction. While there, in an attempt to obtain some marijuana, he went to the student union building at the college in Long Beach. The appellant learned the name of an individual, who subsequent to the initial meeting, advised appellant that he had a large amount of marijuana to sell. Following negotiation and substantial reduction in price, the appellant purchased the marijuana for $3,000 cash.

The marijuana was actually sold in the form of hashish, a concentrated derivative.

Nearly four pounds were delivered in four large clear plastic sacks each containing approximately sixty smaller sacks. The appellant placed the marijuana in a flight bag, and upon return to Boise, deposited it in a coin operated storage locker at the Greyhound Bus Depot.

Due to its continued occupancy without payment of the daily rental, on February 27, 1972, a Greyhound ticket agent opened the storage locker in question. Such opening was a matter of routine and done preparatory to ordering a new lock. Upon so doing, the agent detected a strong odor and therefore opened the flight bag in an attempt to determine its cause. He and another Greyhound agent saw what they "thought to be dope," and together called the police.

An officer arrived at the scene, observed the bag from a distance of five feet, and detected a strong odor of marijuana. He prepared an affidavit and obtained a search warrant whereupon the police looked inside the bag. Its contents were cataloged, photographed, and in part placed back in the locker. On February 29, 1972, the appellant walked into the depot with the key to the locker, paid the delinquent charges, picked up the bag and was arrested. He was charged with illegal possession of a controlled substance, to-wit: marijuana with intent to deliver. (I.C. § 37–2732—felony.) Trial by jury was held, and the appellant was found guilty of the crime as charged. The trial court entered judgment of conviction from which O'Bryan perfected appeal.

The appellant initially assigns as error the trial court's failure to suppress all evidence seized pursuant to the search warrant. Prior to trial, O'Bryan filed a motion to suppress evidence based on the grounds that the search warrant and supporting affidavit were insufficient on their face and invalid because no probable cause existed for believing the grounds alleged in the affidavit on which the warrant was issued.

The record supports that on February 19, 1972, Gary Smith, a ticket agent for Greyhound, conducted an inventory of the storage lockers at the Greyhound depot. The locker in question was found to be in use. On February 20, 1972, the locker was blocked so that it could only be opened by Greyhound personnel. That action was taken pursuant to the contract appearing on each locker door:

"American Locker Service. 25¢ for twenty-four hours or fraction thereof. Overtime storage charges 50¢ for each additional twenty-four hours or fraction thereof. Contract liability: not over $10.00 for loss or damage. No liability for perishable goods after twenty-four hours. Contents may be removed and held 90 days then sold for accrued charge. Directions: 1. Find locker with key in lock. 2. Pull door open. Put in luggage. 3. Open door, insert quarter under key. 4. Close door. Turn and remove key. The key is your check."

On February 27, 1972, Gary Smith opened the locker in question and testified that he was met with an extremely strong odor. The locker was opened pursuant to the following standard procedure: A continuous renter was given five days to return the key and pay overtime charges. If the locker was not called for, a new lock was ordered, and upon its arrival, the locker contents were checked into a secure storage area. Perishable or spoiled items were destroyed prior to checking into storage.

No name appeared on the outside of the flight bag. Therefore, Smith opened it in an attempt to determine both its owner and the cause of odor. Inside he observed the before described plastic sacks. He called Archie Knapp, a baggage man on duty at the time, and together they decided to notify the police.

The call was received by Sergeant Vernon Bisterfeldt who was assigned to the City-County Vice and Intelligence Division

at the time. He instructed a fellow officer, Clayton Almquist, to investigate. Upon arrival, Almquist was taken to a back room where he looked through a door a saw the flight bag in question along with plastic sacks protruding from the top. The record indicates that he detected the strong odor of marijuana or hashish. He called Sergeant Bisterfeldt and a decision was made to obtain a search warrant. Officer Almquist prepared, signed and filed an affidavit whereupon a warrant issued.

The appellant argues that the affidavit does not include facts which show Gary Smith to be credible or his information reliable. As such, the appellant relies upon the two-pronged test established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969). Therein, the United States Supreme Court established constitutional guidelines for measuring hearsay information in a probable cause setting. The credibility test which has become known as the "veracity" prong requires a showing of knowledge of some of the underlying circumstances which lead to the conclusion that the informant is credible or his information reliable. The second test, known as the "basis of knowledge" prong, requires a showing of knowledge of some of the underlying circumstances upon which the informant based his conclusion.

In considering the "veracity" prong, the appellant would have us apply the same rules to a citizen observer as were applied to the so-called confidential, reliable informants dealt with in *Aguilar* and *Spinelli*. Courts have recognized that a different rationale exists for establishing the reliability of named citizen-informers. Krauss v. Superior Court of San Joaquin County, 5 Cal.3d 418, 96 Cal.Rptr. 455, 487 P.2d 1023, 1026 (1971); People v. Hoffman, 45 Ill.2d 221, 258 N.E.2d 326, 328 (1970). In People v. Hubbard, 519 P.2d 951 (Colo. 1974), the Supreme Court of Colorado stated:

"* * * when the source of the information is a citizen-informant who was an eyewitness to the crime and is identified, the information is presumed to be reliable, and the prosecution is not required to establish either the credibility of the informant or the reliability of his information. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); People v. Glaubman, 175 Colo. 41, 485 P.2d 711 (1971)." 519 P.2d at 953.

■ A citizen informant identified by name and address should not be considered as an ordinary confidential informant. Operating under the presumption above, we believe constitutional safeguards are met when the affidavit supporting a search warrant contains the name and address of a citizen-informant along with a statement of underlying circumstances upon which the informant based his conclusion.

■ The circumstances related by Gary Smith to Officer Almquist in this case clearly satisfy the "basis of knowledge" prong and are sufficient to establish probable cause of the existence of marijuana. As such, issuance of the search warrant was valid.

■ Notwithstanding the finding above, we further believe the search was valid due to Greyhound's lawful voluntary consent by virtue of the rental agreement. The contract on the face of the locker stated that the "[c]ontents may be removed and held 90 days then sold for accrued charge." Idaho Code § 45–108 states that a lien may be created by contract to take immediate effect as security for performance of future obligations not then in existence. I.C. § 45–805 states:

"Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof, by labor, or skill, employed for the protection, improvement, safe keeping, or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is

due him from the owner, for such service * * *."

Subsequent to proper removal of the marijuana from the locker, Greyhound had exclusive possession of the property in question as protected by law. That right of exclusive possession was effective as against the true owner until the rental was paid. Therefore, consent was lawful and valid. *See* State v. Oldham, 92 Idaho 124, 438 P.2d 275 (1968); State v. Polson, 81 Idaho 147, 339 P.2d 510 (1959).

The appellant next assigns as error the trial court's refusal to dismiss the information. An amended motion to dismiss was filed on the following grounds:

"(1) The classification of marijuana as a Schedule I controlled substance by the Idaho Controlled Substances Act, Chapter 22 [27], Title 37, Idaho Code, has no rational basis and is repugnant to the equal protection clause of the United States Constitution and the Constitution of the State of Idaho.

"(2) The magistrate erroneously bound said Patrick Edward O'Bryan over to the District Court because there was no evidence presented in the preliminary hearing of intent to deliver a controlled substance that would establish probable cause of guilt.

"(3) The title of the legislative act enacting Idaho Code 37–2732 is not in compliance with Section 16, Article 3 of the Idaho Constitution and is constitutionally void.

"(4) The State of Idaho does not have the authority under its general police power to prohibit the delivery, use or possession of marijuana.

"(5) Alternatively, if it is determined that the State of Idaho does have authority under its police power to regulate marijuana, the State of Idaho must limit its exercise of that power to the regulation, as opposed to the prohibition of the drug, and that regulation must be similar as to substances of equal degree of harm. In support of the Amended Mo-

tion to Dismiss, Appellant submitted at the hearing of the Motion a complete copy of 'Marijuana, A Signal of Misunderstanding; First Report of the National Commission on Marijuana (1970)', Exhibit A. The State allowed the Exhibit to be introduced without objection and offered no evidence to contradict the commission's findings."

The appellant initially argues that there is no rational basis for classifying marijuana as a Schedule I rather than Schedule IV or V controlled substance. Disparity between respective sentences is argued as being violative of equal protection.

In Thompson v. Hagan, 96 Idaho 19, 523 P.2d 1365 (1974), this Court recently established a two tier test to determine when a statutory classification scheme is in violation of equal protection guarantees.

"If the classification involves a fundamental right such as the right to vote, or if the classification involves a suspect classification such as race, it has been held that the state bears a heavy burden to justify the classification distinctions. The analysis for fundamental rights and suspect classifications is called the strict scrutiny test. In all other areas of the law such as social welfare legislation, a restrained standard of review is applied.

. . . The restrained review approach requires that the statutory classification be reasonably related to the purpose of the statute." 523 P.2d at 1367. (footnotes omitted)

The right to smoke marijuana is not a fundamental right. Therefore, the Court is not faced with the strict scrutiny test. The restrained standard of review will be applied. As such, the statutory classification must be reasonably related to the purpose of the statute. That purpose is to protect the community from threats posed to public health and safety by use of marijuana. Under the restrained review test, this Court will not invalidate or nullify an act unless the statutory classification is clearly unrelated to the purpose of the

act. The burden of establishing the above rests upon the party asserting its invalidity, Cummings v. J. R. Simplot Co., 95 Idaho 465, 468, 511 P.2d 282 (1973); Leonardson v. Moon, 92 Idaho 796, 806, 451 P.2d 542 (1969); Idaho Telephone Co. v. Baird, 91 Idaho 425, 528, 423 P.2d 337 (1967); and this burden has not been met. As such, we cannot hold the classification scheme as being arbitrary, irrational, or in violation of equal protection.

Part 2 of the appellant's amended motion to dismiss the information was based on the grounds that the magistrate erroneously held the appellant to answer in the district court due to a lack of evidence presented in the preliminary hearing on intent to deliver.

The appellant relies upon the case of State v. O'Mealey, 95 Idaho 202, 506 P.2d 99 (1973) to support his argument. In O'Mealey, the defendant had been arrested with six tablets of LSD, 38 tablets of amphetamine sulfate, .061 grains of cocaine hydrochloride, and approximately 2¼ ounces of marijuana. The magistrate bound the defendant over for trial and the district court granted the defendant's motion to dismiss. On appeal this court stated:

"In order to satisfy the reasonable man test set forth above either some evidence must have been adduced at the preliminary hearing to support the inference that defendant intended to deliver the substances, or this court must be able to take judicial notice of what constitutes reasonable quantities of drugs for personal uses. No evidence of any kind was presented at the preliminary hearing concerning the quantities the drug user might be expected to have for his own personal use.

* * * it is crucial in a matter of this type that the State in its evidence furnish the lower court and this court with some purported evidence sufficient to reach a conclusion as to what amount of drugs may create a presumption of in-

tent to deliver. In the absence of any statutory presumption, without any other evidence to corroborate defendant's intent to deliver, and without sufficient knowledge upon which to base judicial notice, we have no alternative but to find that the magistrate in this case abused his discretion in binding the defendant over for trial." 95 Idaho at 205, 506 P.2d at 102.

The Court's statement in O'Mealey that quantity in and of itself, without any other evidence, does not prove possession with intent to deliver must have some practical limitation. In that case the amounts were much smaller.

In the case at hand, the record supports that there were four one pound bags of hashish (each with sixty-four smaller baggies containing five or six grams per baggie) carrying a value of $12,800. Testimony indicated that hashish is smoked in a pipe and that the above amount constituted thousands of pipefuls. The appellant's exhibit, Marijuana, A Signal of Misunderstanding; First Report of the National Commission on Marijuana and Drug Abuse, 1972, Appendix I indicates that thousands of pipefuls of hashish is much more than one person could be expected to use on his own.

The standard to be used in evaluating sufficiency of evidence presented at a preliminary hearing was set forth as follows in O'Mealey:

"The state is not required to produce all of its evidence at a preliminary examination; if it produces enough to satisfy the committing magistrate that a crime has been committed and that there is reasonable or probable cause to believe the accused committed it, it is the duty of the magistrate to hold the accused for trial. The words *'reasonable or probable cause' mean such evidence as would lead a reasonable person to believe the accused party has probably or likely committed the offense charged.'* (citations omitted; emphasis supplied)" 95 Idaho at 204, 506 P.2d at 101.

I.C. § 19–815; Carey v. State, 91 Idaho 706, 709, 429 P.2d 836 (1967); Martinez v. State, 90 Idaho 229, 232, 409 P.2d 426 (1965).

■ A magistrate's discretion in ordering commitment should not be disturbed except in clear cases of abuse. I.C. § 19–4215(7); State v. O'Mealey, *supra*; Carey v. State, *supra*; Martinez v. State, *supra*. No such showing was made, therefore the magistrate's ruling was valid.

The third basis urged by appellant for the dismissal of the information is that the title of legislative act I.C. § 37–2732 is not in compliance with Section 16, Article 3 of the Idaho Constitution and is constitutionally void. Section 16, Article 3 of the Idaho Constitution reads as follows:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

The appellant argues that the legislature cannot establish a series of intricate crimes by simply prescribing the offenses. Without sufficient description in the title, he argues that the public is not made aware of what constitutes a crime.

■ The fact that the public must be made aware of what constitutes a crime is not a proper argument under Section 16 of Article 3. It is the statute itself, not the title, which must make the public aware of what constitutes the crime involved. The purpose of this section is to prevent fraud and deception in the enactment of laws, and to reasonably notify legislatures and people of the intent covered by the law. State ex rel. Graham v. Enking, 59 Idaho 321, 335, 82 P.2d 649 (1938). As such, the title of the legislative act must set forth the general subject, but need not serve as a catalog or index to the subject matter. Golconda Lead Mines v. Neill, 82 Idaho 96, 103, 350 P.2d 221 (1960); Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, 704, 78 P.2d 105 (1938). To warrant the nullification of a statute because its subject or object is not properly expressed in its title, the violation must not only be substantial, but must be plain, clear, manifest and unmistakable. Golconda Lead Mines v. Neill, *supra*. No such violation is shown in the case at bar, therefore I.C. § 37–2732 has sufficient title.

■ The fourth and fifth grounds urged by appellant in his amended motion to dismiss were that the State of Idaho does not have the authority under its general police power to prohibit the delivery, use or possession of marijuana. Alternatively, if it is determined that the state does have such authority, the state must limit its exercise of that authority to the regulation as opposed to prohibition of the drug.

In Rowe v. City of Pocatello, 70 Idaho 343, 349, 218 P.2d 695 (1950) this Court held that a state's police power embraces the whole system of internal regulation by which the state seeks to preserve public order. That holding was clarified in Berry v. Koehler, 84 Idaho 170, 176, 369 P.2d 1010 (1962), wherein we stated:

"The Legislature, under the broad field of 'police power', may enact laws concerning the health, welfare and morals of the people. This authority, resting with the legislature, is not subject to question by the courts, except to determine whether such authority has been exercised in an arbitrary or unreasonable manner, and whether it actually accomplishes some real purpose, State v. Finney, 65 Idaho 630, 150 P.2d 130." 84 Idaho at 176, 369 P.2d at 1013.

The use of marijuana within this state clearly concerns the health and welfare of its people. The prohibition of its use or possession is valid pursuant to the police power of this state. The exercise of that prohibition has not been shown to be arbitrary, capricious or unreasonably interfering with the liberty of any individual. Therefore, we hold the act not to be an abuse of legislative power.

The appellant next assigns as error the trial court's admission of the flight bag and its contents (state's exhibit I). Error is based upon alleged improper sampling.

The record indicates that the respondent called Richard Groff, a state chemist, who testified that he performed tests on a composite sample of 10 percent of the four large sacks. Approximately 24 of the individual smaller sacks were analyzed and all were found to contain marijuana. The appellant objected to entrance into evidence of the untested material and the district court overruled that objection.

This Court has consistently ruled that a sample must be shown to be in the same condition or representative of the entire lot before it can be introduced into evidence. C. C. Anderson Stores Co. v. Boise Water Corp., 84 Idaho 355, 363, 372 P.2d 752 (1962); Village of Lapwai v. Alligier, 69 Idaho 397, 400, 207 P.2d 1025 (1949). Representation, however, does not require analysis of the complete lot. The record shows that Mr. Groff first examined all the sacks visually finding them to be identical. Thereafter he took a random sample of 10 percent. An expert noted that all of the marijuana could not have been tested for it would have been destroyed. In view of the visibility and randomness involved, this Court holds that the sample tested by the state was representative and adequate.

The appellant next assigns as error the trial court's refusal to strike certain testimony of Officer Bisterfeldt. His remarks are alleged to be volunteered, prejudicial and inflammatory.

During cross-examination, Officer Bisterfeldt was asked the following question:

"Question: And in your experience, don't those that have more money attempt to purchase more marijuana at one particular time than those with less money?

"Answer: In my experience, the people who buy it in the larger quantities, no matter what the age, buy it to give or to sell."

The appellant failed to object to his answer until a number of witnesses and a number of hours had passed. At that time a motion to strike was entered.

In numerous decisions, this Court has stated that an objection to evidence must be timely. Eastern Idaho Loan and Trust Co. v. Blomberg, 62 Idaho 497, 505, 113 P.2d 406 (1941); State v. Boyatt, 59 Idaho 771, 784, 87 P.2d 992 (1939). Normally, an objection should be made as soon as the question is asked. However, when faced with a non-responsive answer as in the matter at bar, the proper procedure is to move to strike the answer from the record.

A motion to strike is essentially a delayed objection, and the usual rule governing timeliness applies. In Hall v. Boise Payette Lumber Co., 63 Idaho 686, 693, 125 P.2d 311 (1942), this Court held that a motion made on the fourth day of the trial to strike testimony admitted without objection on the first day was untimely. Even though faced with a time span of several hours rather than several days, we hold that the motion to strike in the present case is untimely. Therefore, no error was committed by the trial court in denying the motion to strike.

The appellant next assigns as error the trial court's failure to direct a judgment of acquittal.

A motion for directed verdict of acquittal must be granted only when there is "no evidence" upon which to base a verdict of guilt. Under this rule, directed verdicts must be limited to cases involving a total lack of evidence. State v. Jesser, 95 Idaho 43, 48, 501 P.2d 727 (1972). *See also* State v. Powaukee, 78 Idaho 257, 300 P.2d 488 (1956); State v. Adair, 70 Idaho 486, 222 P.2d 741 (1950). The record shows existence of evidence of guilt. The appellant admitted possession of the drug. The amount involved coupled with testimony concerning usage are sufficient to infer intent to deliver. Therefore, the

trial judge was correct in refusing to grant the appellant's motion.

As final error, the appellant asserts that the trial court abused its discretion in sentencing the defendant to three years in the Idaho State Penitentiary.

 This Court has often stated that it will not interfere with imposition of sentence absent a clear showing of trial court abuse of discretion. State v. Ogata, 95 Idaho 309, 311, 508 P.2d 141 (1973); State v. Cypher, 92 Idaho 159, 165, 438 P. 2d 904 (1968). Such abuse normally will not appear when the sentence is within the limits prescribed by statute. State v. Mc-Clellan, 96 Idaho 569, 532 P.2d 574 (1975); State v. Ogata, *supra*; State v. Dunn, 91 Idaho 870, 876, 434 P.2d 88 (1967); King v. State, 91 Idaho 97, 98, 416 P.2d 44 (1966).

 Maximum sentence for violation of I.C. § 37–2732 is fifteen years in prison and/or $25,000 fine. O'Bryan was sentenced to three years incarceration without fine, therefore we cannot hold that the trial judge abused his discretion in so sentencing the defendant.

Judgment affirmed.

McQUADE, C. J., and McFADDEN, SHEPARD and BAKES, JJ., concur.