678 P.2d 60

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Joseph P. KELLY, Defendant-Appellant.**

**No. 13796.**

Court of Appeals of Idaho.

Jan. 31, 1984.

Rehearing Denied March 29, 1984.

Petition for Review Denied
June 11, 1984.

Joseph P. Kelly, defendant-appellant pro se.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Timothy M. Walton, Steven W. Berenter, Deputy Attys. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Joseph Kelly appeals from his felony conviction for possession of marijuana with intent to manufacture. I.C. · § 37–2732(a)(1)(B). The issues we address in this opinion fall into two broad categories: (1) whether the contraband introduced by the state against Kelly at his trial should have been suppressed upon the ground that it was seized in violation of the fourth amendment; and (2) whether Idaho's laws forbidding and penalizing the growing of marijuana are unconstitutional. We affirm the judgment of conviction.

In 1978 Joseph Kelly purchased certain rural property in Adams County known as the See-Saw Ranch, consisting of a house, some outbuildings and acreage adjacent to U.S. Highway 95. In the late afternoon of September 14, 1978, Adams County Sheriff Jim Hileman and his deputy, Leroy Bean, drove to the ranch to investigate an informant's tip that marijuana was growing there. The officers parked their vehicle along Highway 95 and walked down an embankment to Kelly's fence line. There they observed a patch of approximately 450 well-tended young plants on the other side of the fence. They concluded it was marijuana. Both men immediately crossed over the fence and uprooted the plants. They noted that Kelly's dwelling was about 300 yards from the marijuana patch and that there appeared to be a path leading from the patch to the house. Armed with this information, Bean drove to a magistrate's home in Weiser to obtain arrest and search warrants.[1] Bean testified under oath before the magistrate who found probable cause for issuing warrants to arrest Kelly and to search the buildings and premises of the See-Saw Ranch. Later that evening several officers returned to the ranch. They arrested Kelly and conducted a thorough search of the house and outbuildings, discovering dried marijuana, paraphernalia for smoking and processing marijuana and more growing plants. Unable to complete the search that evening, several officers returned the following day to finish the task. As a result of evidence obtained from this search and from the initial seizure, Kelly was convicted following a jury trial.

I

Kelly first urges that the contraband introduced against him should have been suppressed because the initial seizure of the growing plants, which furnished the basis

1. The record indicates that the Adams County magistrate was unavailable. The nearest acces-sible magistrate was apparently at Weiser, in Washington County, some sixty miles away.

for obtaining the search warrant, was illegal. He emphasizes that in obtaining the evidence the officers trespassed upon his property. The question is whether the fourth amendment of the United States Constitution applies to the initial warrantless search and seizure, for if it does not, the evidence need not be suppressed; but if it does apply, at least the evidence seized initially must be suppressed.

■ Unless a person has a legitimate or reasonable expectation of privacy in the area searched, he is not entitled to the protections of the fourth amendment. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Martinez,* 102 Idaho 875, 643 P.2d 555 (Ct. App.1982). The reason is that "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. at 351, 88 S.Ct. at 511. From this rule Justice Harlan derived his well-known twofold test. Before the fourth amendment applies to a search and seizure, a person must, first, "have exhibited an actual (subjective) expectation of privacy and, second, that ... expectation [must] be one that society is prepared to recognize as 'reasonable.'" *Id.* at 361, 88 S.Ct. at 516 (Harlan, J., concurring).

In *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the Supreme Court held that the fourth amendment protections do not extend to "open fields." Those protections are not brought into play unless there is an official search and seizure of a person, his papers or his effects, or an "actual physical invasion of his house 'or curtilage' for the purpose of making a seizure." *Olmstead v. United States,* 277 U.S. 438, 466, 48 S.Ct. 564, 568, 72 L.Ed. 944 (1928). A continuing debate has arisen in the courts concerning the effect of *Katz* on the "open fields doctrine" promulgated by *Hester.* *See* Case Comment, *Katz in Open Fields, United States v. Oliver,* 20 AM.CRIM.L.REV. 485 (1983). We, however, need not enter this debate

today as, even under the narrower *Katz* formulation, the fourth amendment does not apply to the warrantless search and seizure in this case.

■ Applying *Katz,* we first hold that whether Kelly had a subjective expectation of privacy regarding the observation of marijuana growing near the boundary of his property, his expectation was in no sense reasonable. The patch was growing behind a barbed wire fence fifty feet from a public highway and the plants were visible, if not readily identifiable, to a person standing on the roadway. While it is not clear, the record suggests that the land between the highway and the fence is public property. Kelly does not contend, and the record does not show, that the officers committed any trespass until they crossed the fence adjacent to the highway right-of-way. They had already identified the plants as marijuana before they crossed the fence to seize the plants. It is clear that Kelly could have no reasonable expectation that members of the public would not walk along the highway right-of-way and look onto his property. This is no more than the officers did when they identified the plants as marijuana. The observation of the marijuana was thus not a search prohibited by the fourth amendment.

This case is akin to *State v. Pontier,* 95 Idaho 707, 518 P.2d 969 (1974). In that case, after receiving a tip that marijuana was growing in the defendant's backyard, the police received permission from a neighbor to enter her yard and look into Pontier's backyard for suspicious plants. Looking over a short picket fence and through overhanging foliage, the police identified marijuana plants growing near the defendant's garage. Relying upon *Katz, supra,* our Supreme Court held that the police observation of the defendant's yard was not a search within the purview of the fourth amendment. The court held that since Pontier was growing plants in a place where they were readily observable by a curious neighbor, the defendant had no reasonable expectation of privacy con-

cerning the plants. 95 Idaho at 711, 518 P.2d at 973. *See also United States v. Rucinski,* 658 F.2d 741 (10th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 649 (1982).

·It is, however, one thing to say that Kelly had no reasonable expectation of privacy which would permit him to challenge the warrantless observation of the marijuana from outside his property, but it is quite another thing to say that he had no reasonable expectation of privacy to prevent a warrantless trespass onto his property to *seize* the marijuana. The search and the seizure require independent analysis under *Katz* to determine whether either violates the fourth amendment. Having held that the observation of the marijuana was not a prohibited search, we now address the question of whether the officers violated the standards of the fourth amendment by crossing the barbed wire fence and seizing the growing marijuana.

■ In *Katz,* as noted above, the United States Supreme Court recognized that the fourth amendment protects people, not places, against unreasonable searches and seizures. The Supreme Court further stated that "it becomes clear that the reach of the Amendment cannot turn upon the presence or absence of a physical intrusion to any given enclosure." *Katz v. United States,* 389 U.S. at 353, 88 S.Ct. at 512. On the other hand, "the Court has not altogether abandoned the use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment." *Rakas v. Illinois,* 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978). Therefore, the fact that the officers had to trespass on Kelly's property to seize the marijuana has some bearing on whether he is entitled to fourth amendment protection against that seizure.

■ Although the vitality of *Hester v. United States, supra,* is uncertain, it at least stands for the proposition "that open fields are not areas in which one traditionally might reasonably expect privacy." *United States v. Freie,* 545 F.2d 1217, 1223 (9th Cir.1976). A person, however, may strengthen his expectation of privacy in an open field should he attempt to exclude the public by means of, for example, a fence. *See United States v. Van Dyke,* 643 F.2d 992 (4th Cir.1981). In the present case, the fence which divided Kelly's land from the outside world was a barbed wire fence. There is nothing about a barbed wire fence in itself which would be inconsistent with a reasonable expectation of privacy. While ineffective to keep out prying eyes, it may well be effective to prevent a physical trespass.

■ However, the fence with which Kelly seeks to establish a reasonable expectation of privacy seems of little value for either purpose. One observer stated at the suppression hearing that the wire was loose, some of the fence posts were leaning and some wire was lying on the ground. Under these circumstances we cannot say that Kelly had a reasonable expectation of privacy in this open field. *Cf. People v. Fillhart,* 93 Misc.2d 911, 403 N.Y.S.2d 642 (1978) (the court upheld a seizure which occurred on property enclosed by "a stone fence in poor condition, about two to three feet high"). Not only do these facts fail to convince us that Kelly had a reasonable expectation of privacy, but they also cast doubts on whether he, in fact, had an actual or subjective expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). We believe that the average farmer or rancher would not be shocked to learn he must have a fence and maintain it in good condition to have a reasonable expectation of privacy to prevent trespasses upon what otherwise would be only an open field.

■ In Idaho this belief has a historical basis that has long been reflected in our statutes. For example, our laws have generally required a property owner in rural areas of the state to maintain a "lawful fence" before he can justifiably complain about trespassing domestic livestock. *See* I.C. §§ 35–101 to –112 and 25–2201 to –2211. Moreover, mere intrusions by per-

sons onto fenced private land in rural areas of the state will not constitute a criminal trespass. Before such intrusions can be found to be unlawful, the property owner must have taken the extra step of posting his enclosed lands in the prescribed manner with "no trespassing" signs. I.C. §§ 6–202, 18–7008 and 36–1603. Here, there is no evidence that Kelly had his property enclosed with a substantial fence or that he had posted any "no trespassing" signs. He has thus failed to show that he had taken any steps to exclude the public from that part of the property adjacent to the highway where the officers first seized the plants.

■ We hold, therefore, that the officers did not violate Kelly's fourth amendment rights by crossing the barbed wire fence. They were legally entitled to seize the marijuana which was in open view. This seizure, in turn, could be used as the basis for obtaining a valid search warrant directed to the buildings and the premises near the buildings.[2]

Kelly next urges that all the seized evidence should be suppressed because, in applying for a search warrant, Deputy Bean allegedly lied in sworn testimony to the magistrate. Specifically, Kelly claims that Bean lied when he told the magistrate that the marijuana uprooted by the officers was located on land being purchased by Kelly and that the path from the patch led to Kelly's house.

■ We note, initially, that when a search has been made pursuant to a warrant the burden is on the defendant to show that the search was invalid. W. RINGEL, SEARCHES & SEIZURES, ARREST AND CONFESSIONS § 7.1 (1983); *State v. Lopez*, 115 Ariz. 40, 563 P.2d 295 (App. 1977); *State v. Koberstein*, 8 Or.App. 307, 493 P.2d 176 (1971), *review denied* (1972). In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), the Supreme Court held:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Our Supreme Court applied this rule in *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979). In *Lindner* an officer seeking a warrant had mistakenly named a source for certain information the officer had provided to the magistrate. In fact, part of that information was obtained by the officer's own routine investigation and not from the named source. The Supreme Court concluded that "at most only a negligent misrepresentation was made." In that context the court held that "negligent or innocent misrepresentations, even if necessary to establish probable cause, will not invalidate a warrant." *Id.* at 41, 593 P.2d at 856.

■ We have reviewed the record in this case, including the transcripts of the probable cause hearing before the magistrate, the preliminary hearing, the suppression hearing and testimony at the trial. We do not find evidence that Bean lied, or that he made statements in reckless disregard for the truth when he told the magistrate that the land where the marijuana was growing belonged to Kelly and that the path from the marijuana patch led to

---

**2.** We note that the validity of the search warrant is not dependent upon the validity of the initial seizure. Independent of the seizure, the officers—by their observations of growing marijua-

na—had developed probable cause to obtain a search warrant before they went onto Kelly's property.

Kelly's house. Moreover, Kelly did not even attempt to establish that Bean's statements were false. Kelly did not present any evidence, let alone establish by a preponderance of the evidence, that the patch was not located on his land, or that the path led elsewhere than to his home. Since Kelly did not meet this evidentiary burden, his attack on the warrant affidavit fails.

■ Kelly's next contention is that the evidence should have been suppressed because the magistrate lacked probable cause to issue the search warrant. This argument is devoid of merit. Kelly places too much reliance upon the officer's need to show the magistrate that he knew Kelly was purchasing the See-Saw Ranch and that the house on the property belonged to Kelly. Such information was not essential to the issuance of the warrant to search the property. Probable cause to search was shown regardless of who owned the premises and regardless of who occupied the house. Bean testified that he and Sheriff Hileman discovered several hundred growing marijuana plants on land he thought was being purchased by Kelly. He testified that the patch had been recently cultivated, irrigated and fertilized. Bean also stated that there was a path leading from the patch to a house about 300 yards away. The patch was located within a fence encompassing the property known as the See-Saw Ranch. From this evidence a reasonable person could easily conclude that the patch was being cultivated by the owner or occupants of the ranch. A reasonable person could also conclude that there was likely to be more marijuana, as well as equipment and paraphernalia for processing or smoking it, located within the dwelling or in one or more of the outbuildings on the premises.

■ Kelly next argues that the warrant was invalid because the affidavit did not contain enough facts to justify a nighttime search. Idaho Code § 19-4411 provides that a magistrate

> must insert a direction in the warrant that it be served in the daytime unless the affidavits are positive that the prop-

erty is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night.

In addition, Idaho Criminal Rule 41(c) provides in part that a warrant must be served in the daytime "unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than the daytime." To justify nighttime execution of the warrant, therefore, the affidavit must both show reasonable cause for conducting the search at night and must be positive that controlled substances are in the place to be searched. *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App.1983).

■ In this case the magistrate found that the evidence presented by Bean was sufficient to justify a nighttime search. A magistrate's finding of reasonable cause for a nighttime search will not be disturbed on appeal, absent an abuse of discretion. *State v. Lindner*, 100 Idaho at 43, 592 P.2d at 858.

■ We have carefully reviewed the record of the suppression hearings and the trial conducted by the district judge. We cannot find where any assertion was made in the district court that the search pursuant to the warrant was invalid because it was conducted at nighttime. Rather, the written and oral suppression motions focused upon other issues, such as the validity of the initial seizure of marijuana, the existence of probable cause to support the warrant, the language employed in the warrant, and the scope of items taken under the warrant. The nighttime search issue is raised for the first time on appeal. The general rule in Idaho is that, in the absence of a timely objection to an alleged error at trial, an appellate court will not consider the alleged error on appeal. *State v. Sharp*, 101 Idaho 498, 616 P.2d 1034 (1980).

■ Failure to obtain a ruling on an issue below may not be fatal in a criminal case if the issue relates to "fundamental error." *E.g., State v. Haggard*, 94 Idaho

249, 486 P.2d 260 (1971). However, the doctrine of fundamental error is grounded in a criminal defendant's due process right to a fair trial. It generally applies to error committed during trial but to which no timely objection is then made. *E.g., State v. Wells,* 103 Idaho 137, 645 P.2d 371 (Ct. App.1982). In contrast, suppression of evidence is a matter required by Rule 12, I.C.R., to be raised before trial. If an issue relating to suppression of evidence is not timely raised before trial, it is waived. A district court, as a matter of discretion, may—but is not required to—consider the issue later. *E.g., State v. Gerhardt,* 97 Idaho 603, 549 P.2d 262 (1976); *State v. Collinsworth,* 96 Idaho 910, 539 P.2d 263 (1975). However, where—as here—the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute, we hold that the "fundamental error" doctrine is not invoked. Accordingly, we will not review the alleged error of issuing a "nighttime" search warrant in this case.

Kelly asserts next that the warrant was constitutionally defective because it was general on its face. Specifically, Kelly objects because the warrant authorized the officers to search his premises not only for an "illegal substance (to-wit: marijuana) together with instrumentalities for the processing and/or use of such substance" but also "for any other fruits, instrumentalities and evidence of crime."

The Supreme Court addressed a similar issue in the case of *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). In that case an attorney was charged with the crime of false pretenses in connection with a land sale. The police obtained warrants to search his office for documents pertaining to the transaction. In appealing his conviction, the attorney claimed that the warrants were impermissibly general because in each warrant, at the end of a list of particular items to be seized, there appeared a phrase authorizing the police to seize "other fruits, instrumentalities and evidence of crime at this [time] unknown." In rejecting the argument that this language rendered the warrants fatal-

ly general, the Supreme Court determined that, from the context, it was clear that the term "crime" in the warrants referred only to the crime of false pretenses with respect to the land transaction in question. The Supreme Court held that the warrants were not general because they did not authorize the officers to search for evidence of other crimes, but only for evidence relevant to the charge of false pretenses. 427 U.S. at 480–81, 96 S.Ct. at 2748–49.

We have previously applied *Andresen* in *State v. Wolf,* 102 Idaho 789, 640 P.2d 1190 (Ct.App.1982), and we believe *Andresen* is also controlling here. Where, as here, a residual phrase in a warrant, such as "other fruits, instrumentalities and evidence of crime," follows a specific enumeration of the items to be seized, it should be read as only authorizing a search for evidence relating to the crime alleged, and not as authorizing a general search for evidence of other unrelated crimes. Viewed in this light, the warrant is valid.

Kelly also contends that the evidence seized in the search of his house must be suppressed because, even if the warrant was not general on its face, it was "executed generally" by the officers. He argues that the officers conducted three separate searches lasting many hours, and that the officers seized many items that clearly were not contraband. Several dozen items were listed on the sheriff's return of the warrant. The great majority of items were either contraband or items used for processing or smoking marijuana. Following a suppression hearing, the district court suppressed several items of questionable relevancy to the crime charged against Kelly. However, Kelly contends that the court did not go far enough. He argues that the officers engaged in a wholesale search and that, for this reason, *all* the evidence they seized must be suppressed. We disagree.

The record shows that the officers began their search late in the evening. They found many marijuana plants growing near Kelly's house and large quantities

of the plant in various stages of processing. Unable to complete their search due to darkness, one of the officers was left to stand guard and the others returned the next morning. The so-called "third search" occurred on the second day when the officers returned after lunch to pick up the evidence they had gathered. We believe that the duration of the search did not render it invalid. Moreover, because most of the items seized were in fact related to the marijuana operation, and because none of the other items were used as a basis for charging any other crime, we conclude that the officers did not conduct an indiscriminate search so offensive to fourth amendment values that all evidence need be suppressed.

■ Finally, Kelly contends that the evidence seized from him must be suppressed for failure of the sheriff to deliver to him a copy of the return of the warrant or to leave a copy of the return at his house. In *State v. Curry*, 103 Idaho 332, 647 P.2d 788 (Ct.App.1982), we addressed a similar problem. We held that defects in the return of a search warrant are not of a constitutional dimension. They do not require the warrant to be quashed and evidence seized pursuant to an otherwise valid search to be suppressed unless a defendant demonstrates that he has been substantially prejudiced by lack of the return. Here Kelly has demonstrated no prejudice from the failure of the sheriff to properly deliver a copy of the return to him. Accordingly, the evidence need not be suppressed.

## II

Kelly next raises several constitutional challenges to Idaho's marijuana laws. He contends first that I.C. § 37–2732, which prohibits the growing of marijuana, is unconstitutional because it makes no exception for growing the plant for personal use in the privacy of the home and thus infringes on the fundamental constitutional right to privacy. Second, he argues that I.C. § 37–2705, which classifies marijuana as a Schedule I controlled substance, is violative

of the due process and equal protection clauses of the federal constitution.

Two previous decisions of our Supreme Court have addressed and rejected similar contentions. In *State v. Kincaid,* 98 Idaho 440, 566 P.2d 763 (1977), the court held that there is no fundamental right of privacy which places upon the state the burden of showing a compelling interest in regulating a citizen's possession of marijuana in his home. Accordingly, the court rejected Kincaid's challenge to the constitutionality of I.C. § 37–2732(c)(2), holding that Kincaid did not meet his burden of showing that the proscriptions of the statute were clearly unrelated to its purpose. Similarly, in *State v. O'Bryan,* 96 Idaho 548, 531 P.2d 1193 (1975), the court held that there is no fundamental right to smoke marijuana. Accordingly, in addressing O'Bryan's equal protection challenge to I.C. § 37–2732, the court applied a restrained standard of review, rather than the strict scrutiny standard urged by O'Bryan. The court upheld the statute, concluding that the statutory classification was reasonably related to its purpose "to protect the community from threats posed to public health and safety by use of marijuana." *State v. O'Bryan,* 96 Idaho at 553, 531 P.2d at 1198.

■ The court's decisions in *O'Bryan* and *Kincaid* are controlling here. They do not recognize a fundamental right to possess or to grow marijuana, even for personal consumption in the privacy of the home. Under the restrained review test, we cannot invalidate a legislative scheme unless the statutory classification is clearly unrelated to the purpose of the law and the law serves no legitimate social interest. The burden of making such a showing is upon the party challenging the statute. *State v. O'Bryan,* 96 Idaho at 553–54, 531 P.2d at 1198–99. Kelly has not met the burden here. Given the present state of scientific uncertainty about the effects of using marijuana, we cannot say that it was irrational or arbitrary for the legislature to proscribe its cultivation, even for personal use, and to attach felony penalties for such conduct.

██ Finally, Kelly contends that the Idaho statutes applicable to his case are unconstitutional because they violate the prohibitions against excessive fines and cruel and unusual punishment contained in the eighth amendment to the United States Constitution and in article 1, section 6 of the Idaho Constitution. Idaho Code § 37–2732 provides that a person may be sentenced to a term not exceeding five years imprisonment and fined up to $15,000 for growing marijuana. Kelly's basic argument is that a statute permitting a felony conviction and such a heavy punishment for a crime that may involve only a single person acting to satisfy his own desires in the privacy of his own property "cannot be constitutionally tolerated." Kelly does not contend that his own sentence was excessive, except that it involves a felony conviction. In this case the district judge sentenced Kelly to an indeterminate two-year term to the Board of Correction, but then suspended execution of the sentence, placing Kelly on three years probation. Included in the terms of probation were requirements that Kelly spend forty-five days in jail and pay a fine of $1,000.[3]

██ It is well-established in Idaho that a sentence within statutory limits is not ordinarily considered cruel and unusual punishment. *Watkins v. State*, 101 Idaho 758, 620 P.2d 792 (1980); *State v. Angel*, 103 Idaho 624, 651 P.2d 558 (Ct.App.1982). Moreover, we have been shown no authority for the proposition that classification of a person's offense, or the disabilities attached to that classification can, without more, constitute cruel and unusual punishment. Before a defendant can claim a violation of his constitutional rights he must show that the punishment which he suffers by reason of the sentence imposed is actually cruel and unusual. *State v. Smith*, 93 Wash.2d 329, 610 P.2d 869, 878 (1980). The discussion of this issue in *Smith* is thorough. It is a comparable case because the convictions there were for possession of marijuana under statutes authorizing a maximum five years imprisonment and the sentences were similarly deferred. The Washington Supreme Court said:

> A punishment is grossly disproportionate only if the conduct [possession of marijuana] should never be proscribed, *see e.g., Robinson v. California,* ... [370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)] or if the punishment is clearly arbitrary and shocking to the sense of justice.

*Id.* 610 P.2d at 879. We conclude that Kelly's punishment is not grossly disproportionate to his offense, considering the amount of marijuana and paraphernalia seized, nor is it clearly arbitrary and shocking to the sense of justice.

We have carefully examined Kelly's remaining assignments of error and we conclude that they also are without merit. We therefore affirm the judgment of conviction.

WALTERS, C.J., concurs.

BURNETT, J., specially concurring.

The court's opinion necessarily addresses a broad spectrum of issues. I write separately to highlight our treatment of the initial, warrantless police entry upon Kelly's land.

In this case the state has argued that because the marijuana was cultivated in a field within view of a public highway, it was not in a place where a reasonable expectation of privacy could attach. Therefore, the marijuana could be removed without implicating the fourth amendment, even though the seizure was accomplished by a warrantless entry and trespass upon private property. This argument embraces two propositions. The first, which we have accepted, is that if an object on private property is exposed to public view, a law enforcement officer who observes it has not engaged in a "search" under the fourth

---

**3.** Kelly still has the opportunity to avoid a felony conviction. If he successfully completes his probation he may—by complying with the provisions of I.C. § 19–2604—have the judgment of conviction amended to reflect only a misdemeanor conviction, or the case may even be dismissed. The granting of such relief is not mandatory, however.

amendment. The second proposition, which we have rejected, is that if observing the object does not constitute a "search," then the acts of entering the property and taking the object cannot constitute a "seizure" within the fourth amendment.

The privacy interests implicated by a search are not invariably the same as those implicated by a seizure. Each must be examined to determine whether a reasonable expectation of privacy has been infringed. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A reasonable expectation as to what places the public can see does not delimit a reasonable expectation as to what places the public can enter. A person who exposes things to public view in an open area cannot claim that a reasonable expectation of privacy has been infringed when those things are in fact observed. But it does not follow that the same person has forfeited any reasonable expectation that the public will refrain from entering his private property. Lands open to public view are not necessarily open to public entry.

This fundamental point has been recognized by the United States Supreme Court. In *Air Pollution Variance Bd. v. Western Alfalfa,* 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), the Court held that the fourth amendment was not violated when an air quality inspector went upon the outdoor premises of a business establishment, without its knowledge or consent, to conduct a test of smoke emissions visible to the public. But the Court carefully noted that the record did not show the inspector had gone "on premises from which the public was excluded...." *Id.* at 865, 94 S.Ct. at 2116. *Western Alfalfa* demonstrates that the openness of incriminating evidence to public view does not, of itself, cloak a law enforcement officer with authority to make a warrantless entry upon private property from which the public is excluded.

The Supreme Court implicitly has acknowledged a distinction between narrow privacy interests in lands where the public is permitted and broader privacy interests in lands from which the public is excluded. This distinction suggests a balance between fourth amendment values and effective law enforcement where privacy interests in open lands are asserted. Today we have defined that balance as it relates specifically to a poorly fenced, unposted farm field. By rejecting Kelly's claim of a reasonable expectation of privacy, we have avoided extending the fourth amendment to lands where substantial indicia of a privacy interest cannot be found. At the same time, by refusing categorically to deny fourth amendment protection to all "open fields," as urged by the state, we have preserved fourth amendment values in those cases where legitimate privacy interests can be shown.