**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49028**

| | |
|---|---|
| STATE OF IDAHO,<br><br>       **Plaintiff-Respondent,**<br><br>v.<br><br>**KEVIN DAVID LANE,**<br><br>       **Defendant-Appellant.** | **Filed: July 1, 2022**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott Wayman, District Judge.

Judgment of conviction for possession of methamphetamine with intent to deliver and delivery of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Kevin David Lane appeals from his judgment of conviction for possession of methamphetamine with intent to deliver and delivery of a controlled substance. Lane challenges the district court's denial of his motion to suppress, arguing that the affidavit in support of the search warrant was insufficient to establish probable cause. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Lane was charged with trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4)(A). The charge arose after Detective Ryan Jacobson submitted an affidavit and application for search warrant to search a home in Post Falls. In the affidavit, Detective Jacobson stated that he had "received information from a proven reliable, confidential source that Kevin Lane was trafficking methamphetamine" out of his home. Based upon the tip, Detective Jacobson ran a driver's license

1

query and confirmed the identified house was Lane's "listed address." Detective Jacobson then "conducted a trash pull" at the home and reported:

> I sorted through the garbage and found items of note: Numerous pieces of mail addressed to Kevin Lane at [the home]. I located a small, yellow plastic baggie which was consistent with baggies commonly used to hold controlled substance in the drug trade. I observed a white crystalline residue in the baggie which I field tested. The substance tested presumptive positive for amphetamine. I also observed two quart sized zip locked bags. Both of these bags were turned inside out and were wet as if they had been washed. This is a common tactic used by people who dispose of drug baggies in an attempt to prevent the discovery of controlled substances. It would not make sense for someone to wash a plastic baggie that was to be disposed of. The other quart sized baggie had been cut and had "1 lb" written on it.

Detective Jacobson noted in the affidavit that the size of bags found in the trash were "much larger than a normal drug baggie used by consumers of controlled substances, would be more consistent with a baggie used by drug traffickers, and could contain a pound of controlled substances such as methamphetamine." Additionally, the trash also contained Q-tips and Kleenex with black residue on them, which were similar in appearance to items frequently used for cleaning drug pipes.

Based on the accumulation of evidence, the magistrate court issued a search warrant for the residence. When officers arrived to execute the search warrant, Lane was detained at the door and read his *Miranda*[1] rights. He then made a series of incriminating statements to the officers, including they were likely to find an "[o]unce or so" of methamphetamine in a specific drawer in the home. A complete search of the residence yielded multiple bags of methamphetamine along with various drug remnants and drug paraphernalia.

Lane filed a motion to suppress the evidence obtained as a result of the search warrant. In the motion, Lane claimed the search warrant was not sufficiently supported by probable cause because Detective Jacobson failed to state why the confidential informant was reliable and because the evidence discovered in the garbage pull was stale and not indicative of trafficking. Therefore, he argued that the search violated his Fourth Amendment rights. The district court denied Lane's motion to suppress and held that the search was proper because the search warrant was supported by probable cause. The parties then entered into a plea agreement in which Lane pled guilty to reduced charges of possession of methamphetamine with intent to deliver, I.C. § 37-2732(a)(1)(A),

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

methamphetamine delivery, I.C. § 37-2732(a)(1)(A), and he reserved his right to appeal from the district court's denial of his motion to suppress. Lane timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Lane asserts that the district court erred in denying his motion to suppress because the affidavit failed to establish probable cause.

When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate court had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In this evaluation, great deference is paid to the magistrate court's determination. *Gates*, 462 U.S. at 236; *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct. App. 1997). The test for reviewing the magistrate court's decision is whether the court abused its discretion in finding that probable cause existed. *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct. App. 1985). When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct. App. 1984).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and

3

particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 17, of the Idaho Constitution is virtually identical to the Fourth Amendment, except that "oath or affirmation" is termed "affidavit." Therefore, in order for a search warrant to be valid, it must be supported by probable cause to believe that evidence or fruits of a crime may be found in a particular place. *Josephson*, 123 Idaho at 792-93, 852 P.2d at 1389-90.

Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person is guilty of a crime. *See State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Julian*, 129 Idaho at 136, 922 P.2d at 1062.

Lane argues that the affidavit did not establish probable cause because the confidential informant tip did not include the basis of knowledge and the evidence found during the garbage search was stale and not indicative of trafficking. The State argues that although the information related to the confidential informant tip was sparse, it may still be considered in the probable cause analysis. Furthermore, the State argues that, even disregarding the tip, there was still probable cause based upon the evidence from the garbage pull. The State contends the evidence was not stale because drug trafficking is continuous in nature.

Based upon the affidavit, there were essentially two sources of information from which probable cause could be found: (1) the statements made by the confidential informant; and (2) the results of the garbage pull and Detective Jacobson's explanation of their significance.

Probable cause is determined by examining the totality of the circumstances and making a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before the court, there is a fair probability that contraband or other evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238; *Lang*, 105 Idaho at 684, 672 P.2d at 562. In adopting this "totality of the circumstances" test in *Gates*, the United States Supreme Court abandoned a previous standard developed in *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969), which required that the government demonstrate both the informant's veracity and the informant's basis of knowledge. *Gates*, 462 U.S. at 238. In *State v.*

4

*Chapple*, 124 Idaho 525, 528, 861 P.2d 95, 98 (Ct. App. 1993), we explained the effect of the *Gates* decision:

> [T]he Court did not completely abandon the two-pronged test of *Aguilar-Spinelli* but suggested that the two prongs are closely intertwined, so that "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." [*Gates*], 462 U.S. at 233. Thus, while the "totality of the circumstances" has eliminated the rigid requirements of "veracity" and "basis of knowledge" derived from the *Aguilar-Spinelli* decisions, these standards remain a useful first step in evaluating probable cause where the information is derived, at least in part, from an undisclosed informant. *State v. Prestwich*, 110 Idaho 966, 719 P.2d 1226 (Ct. App. 1986); *State v. Schaffer*, 107 Idaho 812, 817, 693 P.2d 458, 463 (Ct. App. 1984).

As noted, Detective Jacobson did not identify the confidential informant but stated that the information was provided by a known, proven, reliable source. In *State v. Peterson*, 133 Idaho 44, 48 n.1, 981 P.2d 1154, 1158 n.1 (Ct. App. 1999), this Court stated that the presence or absence of disclosure of the informant's identity "cannot possibly affect the informant's truthfulness." In *State v. Patterson*, 139 Idaho 858, 87 P.3d 967 (Ct. App. 2003), we further indicated that the informant's veracity or reliability can be established through the credibility of the informant or the specific information provided. *Id*. at 864, 87 P.3d at 973. The State concedes the information provided by Detective Jacobson as to the confidential tip was sparse. The district court found that the tip should be afforded "very little weight" in the probable cause analysis. However, ascribing some weight in the totality of the circumstances analysis remains appropriate.

As to the garbage pull, Lane argues the evidence was stale and insufficient to indicate trafficking and, as a result, could not provide probable cause. However, there exists no magical number of days within which information is fresh and after which the information becomes stale. *State v. Gomez*, 101 Idaho 802, 808, 623 P.2d 110, 116 (1980). Rather, each case must be evaluated in light of the circumstances. *Id.* An important factor in the staleness analysis is the nature of the criminal conduct. *Id.* If the affidavit recounts criminal activities of a continuous nature, a time delay in the sequence of events is of less significance. *State v. Alexander*, 138 Idaho 18, 24, 56 P.3d 780, 786 (Ct. App. 2002).

In regard to the significance of the garbage pull, Lane likens his case to *Josephson*, 123 Idaho at 794, 852 P.2d at 1391. In *Josephson*, the affidavit of probable cause alleged Josephson was growing marijuana in his home and provided information from an anonymous tip and evidence from a garbage pull. *Id.* at 792, 852 P.2d at 1389. The tip was determined to be insufficient

because it lacked the basis of knowledge, veracity, and any corroborating evidence. *Id.* at 793, 852 P.2d at 1390. The garbage pull seized, "mail recently sent to Josephson, two marijuana cigarette butts, an empty pack of 'Zig-Zag' rolling papers, a bag apparently containing marijuana residue, and five plant stems ranging in length from one and one-half inches to two and one-half inches which field-tested positive for marijuana." *Id.* Both the district court and the Idaho Supreme Court found this evidence was indicative of someone smoking marijuana at one point in time but failed to support probable cause of growing marijuana. *Id.* at 794, 852 P.2d at 1391. An individual smoking one time did not suggest there would be contraband found in the home at the time of the search. *Id.* at 795, 852 P.2d at 1392. Since a search of Josephson's trash did not yield any evidence that indicated a crime continuous in nature, the affidavit failed to provide probable cause to issue a search warrant for his home. *Id.*

This case is distinct from *Josephson*. First, the anonymous tip in *Josephson* was insufficient while Detective Jacobson's confidential tip was limited but reliable. Plus, the evidence found in the garbage pull corroborated the confidential informant's tip that Lane was trafficking methamphetamine. Second, Detective Jacobson's garbage pull indicated drug trafficking rather than personal use. Detective Jacobson discovered three baggies in Lane's trash that were consistent with those commonly used to hold controlled substances in the drug trade. The small baggie tested presumptive positive for amphetamine in a field test and the two other quart size zip lock bags appeared to have been washed out in a manner typical of one attempting to evade drug detection. Detective Jacobson averred that the size of the washed out zip locks and the "1 lb" label written on one of them were also of significance relative to drug trafficking. As Detective Jacobson explained in his report, large bags such as those are inconsistent with personal drug use and are indicative of trafficking large amounts of illegal substances.

Based on the totality of the facts, including the confidential informant's tip, the officer's training and experience, and the items discovered in Lane's trash, the affidavit provided probable cause that evidence of drug trafficking would be discovered in Lane's home.

## IV.

## CONCLUSION

The search warrant was supported by probable cause. Thus, the district court did not err when it denied Lane's motion to suppress. We, therefore, affirm Lane's judgment of conviction.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.

6