713 P.2d 447

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Norman TURNBEAUGH,
Defendant-Respondent.**

No. 15420.

Court of Appeals of Idaho.

Nov. 5, 1985.

Rehearing Denied Jan. 21, 1986.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., for plaintiff-appellant.

Gregory C. May and Kelly Kumm (argued), Dial Looze & May, Pocatello, for defendant-respondent.

WALTERS, Chief Judge.

Norman Turnbeaugh was charged with two counts of possession of marijuana, I.C. § 37-2732(e). One count arose from marijuana discovered in a car after Turnbeaugh had a traffic accident. The other count was based on marijuana discovered at Turnbeaugh's residence pursuant to execution of a search warrant issued by a magistrate following the traffic accident. At trial, the district judge concluded that the information used to determine probable cause for issuing the search warrant was stale. Therefore, the district judge ordered suppression of the evidence obtained under the warrant. Turnbeaugh was tried on the remaining count and was acquitted. The state now appeals from the order suppressing the evidence obtained pursuant to the search warrant. We reverse.

The district judge based his decision to suppress on the following facts. On October 2, 1982, Norman Turnbeaugh wrecked a borrowed car on State Highway 37. While investigating the accident, a police officer found a substance he thought to be marijuana scattered throughout the car and two rolls of money totaling $1,000. When Turnbeaugh's wife arrived at the accident scene, she was observed "nervously" searching the vicinity of the accident. Later, the wife went to the hospital where Turnbeaugh was being treated and asked for Turnbeaugh's wallet. When the nurse took the wallet from Turnbeaugh's pocket, a small bag containing a white substance fell out of the wallet. Turnbeaugh's wife grabbed the packet and refused to give it to the nurse. The nurse notified the sheriff's office of the incident.

The police officer and a state narcotics investigator then applied to a magistrate for a warrant to search Turnbeaugh's residence, outbuildings, and several old cars stored on the premises. To show probable cause for the warrant, the officers presented to the magistrate: (1) a statement by Turnbeaugh's neighbor that Turnbeaugh's residence received an inordinate amount of traffic during the early morning hours; (2) a statement by the nurse recounting the incident in the hospital with Mrs. Turnbeaugh; (3) a statement by the police officer about his discoveries at the scene of the accident; and (4) an affidavit by the narcotics investigator regarding other alleged drug trafficking by Turnbeaugh.

The information in the investigator's affidavit, which forms much of the basis for this appeal, was summarized by the district judge as follows:

(1) In 1977, the Pocatello Police Department received information from an informant that Turnbeaugh kept a supply of drugs at his residence. However, be-

tween 1977 and 1982, Turnbeaugh changed his residence.

(2) In December of 1979, an informant told Smart [the investigator] that Norman Turnbeaugh and Larry Hall were major drug traffickers in the Pocatello area, and Hall was later arrested on a drug charge.

(3) In March, 1980, an informant told Mr. Smart that the defendant was selling large quantities of marijuana to Ron Mayne. Mayne was arrested on a marijuana charge, and Mr. Mayne had Turnbeaugh's telephone number in his possession.

(4) From July to November, 1981, an informant told Smart that he had purchased drugs from both Norman Turnbeaugh, the defendant, and Tommy Turnbeaugh, the defendant's brother, and Tommy had told the informant that the defendant kept large quantities of drugs at his home.

(5) In March of 1982, Tommy Turnbeaugh told state investigators that his brother, Norman, kept drugs in several locations around his residence.

(6) On September 30, 1982, an informant told a supervisor of the State Bureau of Investigations that he had purchased cocaine at the defendant's residence, but also stated that purchases had been made at a parking lot in Pocatello, and that Tommy Turnbeaugh had also sold him drugs.

The magistrate determined that probable cause did exist, issued the warrant, and a search was conducted on October 8, 1982. The search produced numerous drugs and drug related paraphernalia. On Turnbeaugh's motion to suppress, the district judge determined that while all the evidence did create probable cause to believe that Turnbeaugh was involved in drug trafficking, the information was too stale to show that contraband would be found at Turnbeaugh's residence. Therefore, the judge suppressed all evidence seized pursuant to the search warrant, precipitating this appeal by the state.

The fourth amendment to the United States Constitution provides that "no warrant shall issue, but upon probable cause, supported by oath or affirmation." Similar language is found in Article I, Section 17 of the Idaho Constitution. The standard for reviewing the magistrate's action in issuing the search warrant is whether he abused his discretion in finding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983); *State v. Schaffer,* 107 Idaho 812, 693 P.2d 458 (Ct.App.1984); *State v. Fowler,* 106 Idaho 3, 674 P.2d 432 (Ct.App.1983). In considering whether the magistrate abused his discretion, we look to see if he had a "substantial basis for concluding that probable cause existed." *State v. Lang,* 105 Idaho at 684, 672 P.2d at 562. As noted, the only aspect of the magistrate's determination of probable cause to issue the warrant, which is in question on this appeal, is whether "staleness" of the information presented to the magistrate would render the magistrate's finding of probable cause an abuse of discretion. Based on the following reasoning, we hold that the magistrate did not abuse his discretion in determining probable cause existed and that the district judge should not have ordered suppression of the evidence.

█ The probable cause required for a search warrant necessitates a finding that evidence is probably connected with some criminal activity and that the evidence being sought can currently be found at a specific place. W. RINGEL, *Searches And Seizures, Arrests And Confessions* § 4.2(a) (1985). Whether information regarding the presence of items in a particular place is stale depends upon the nature of the factual situation involved. As pointed out by the court in *Andresen v. State,* "the observation of a half-smoked marijuana cigarette in an ash tray at a cocktail party may be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later." 24 Md.App. 128, 331 A.2d 78, 106 (1975), *aff'd sub nom. Andresen v. Maryland,* 427 U.S. 463, 96

S.Ct. 2737, 49 L.Ed.2d 627 (1976). Continuing criminal activity, such as narcotics trafficking, is one factual scenario where evidence may not become stale for extended periods of time. *See United States v. Williams*, 603 F.2d 1168 (5th Cir.1979), *cert. denied sub nom. Scalf v. United States*, 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980); *United States v. Harris*, 482 F.2d 1115 (3d Cir.1973). We find a similar situation in the present case.

The district judge opined that the contraband found in Turnbeaugh's home was perishable and that a drug dealer would be likely to sell his inventory. Thus, the judge stated, "fresh information of the location of contraband in the defendant's home is necessary to adequately support a search warrant." We believe, however, that a close examination of the information in the narcotics investigator's affidavit, in combination with the other statements, indicates a continuing criminal activity established in the past and still existing at the time the search warrant was issued.

■ The investigator's affidavit shows that authorities were first alerted in 1977 to the fact that Turnbeaugh was keeping drugs at his residence. In 1979, an informant reported that Turnbeaugh was a major trafficker in drugs. In 1980, an informant again reported Turnbeaugh's drug dealings. In 1981, an informant reported that he had purchased drugs from Turnbeaugh and his brother, and that Turnbeaugh's brother had told the informant that Turnbeaugh kept drugs at his house. In 1982, Turnbeaugh's brother told the investigator that Turnbeaugh had drugs at several places around his residence. Then, eight days before the search warrant was issued, an informant reported buying cocaine at Turnbeaugh's residence at some earlier time. In summary, this information indicates that reports of Turnbeaugh's drug activities began in 1977, and that the reports of such activity continued to within eight days of the issuance of the search warrant. The information also ties Turnb-

eaugh's residence to his reported drug dealing. The discovery of drugs and money at the accident and the nurse's story about the package of the white substance support an inference that Turnbeaugh was dealing in narcotics and kept them at his residence. We note that neither the investigator's affidavit nor the officer's statement about the accident is sufficient, standing alone, to establish probable cause. However, the combination of the two, bolstered by the other evidence, was sufficient for the magistrate to make the permissible inference that probable cause did exist.

One last issue requires comment. Turnbeaugh has requested that, if the district court decision is reversed on appeal and the evidence seized under the warrant is not suppressed, he be granted a *Franks* hearing. A *Franks* hearing may be required if materially false statements are intentionally used to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). However, because the district judge's ruling was based solely on the question of staleness, he did not reach a finding on the need for a *Franks'* hearing. We therefore decline to review on appeal issues not decided by the district judge at trial. On remand the district judge may review whatever evidence Turnbeaugh may offer and hold a hearing if warranted. Accordingly, the order of the district judge suppressing the evidence obtained pursuant to the search warrant is reversed and the case is remanded for proceedings consistent with this opinion.

SWANSTROM, J., concurs. BURNETT, J., voted to grant the petition for rehearing.