795 P.2d 26

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Scott McANDREW, Defendant–Appellant.**

**No. 18161.**

Court of Appeals of Idaho.

July 23, 1990.

Tway & Rosenheim of Boise for defendant-appellant. William J. Tway argued.

Jim Jones, Atty. Gen., Myrna A.I. Stahman (argued), Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Scott McAndrew was convicted by a jury of manufacturing a controlled substance, a felony. I.C. § 37–2732. On appeal, McAndrew seeks to exclude all observations made by the police and all evidence seized by them during a search of his house. In addition, McAndrew seeks to suppress all inculpatory statements made by him. The dispositive issue on appeal is whether probable cause existed for the issuance of the search warrant. The district court determined the magistrate lacked probable cause to issue the search warrant. However, the district court nevertheless upheld the search under the *Leon* good-faith exception to the exclusionary rule. For reasons explained below, we affirm the judgment of the district court.

On February 22, 1988, an anonymous informant contacted the Marijuana Eradication Program in Boise, Idaho. The informant—who we will presume was a male—indicated he had spoken with McAndrew about the possibility of buying 100 live

marijuana plants which McAndrew was currently growing in the basement of his house. The informant stated McAndrew was also involved in "cloning" marijuana. The informant described McAndrew as being in his late 20's, 5'6", 160 lbs., with dark hair and a mustache. The informant also stated McAndrew drove a white Datsun type car and lived at 2227 Ellis, Boise, Idaho. The informant described the house as a white single-story house with a fence across the backyard. The informant indicated the conversation with McAndrew took place about one month before the informant placed the call to the Marijuana Eradication Program.

On February 23, 1988, the informant called again. In this telephone conversation, the informant stated McAndrew had resided at 2227 Ellis for two months and McAndrew was not using his real name on his utility bills.

The informant called a third time on February 24, explaining that McAndrew had told him that he was "sexing" his plants and he needed to dispose of some of them in order to have enough room for the rest of his plants to grow and mature in his basement. The informant also stated McAndrew was using high-energy lights to enhance his growing operation. However, the informant did note that he had not actually seen McAndrew's plants or growing operation.

In an affidavit submitted to the magistrate, the officer assigned to the case stated he had independently verified all of the information received from the informant except those statements which implicated McAndrew in the crime of manufacturing a controlled substance. The officer also stated his secretary ran a power check on the house at 2227 Ellis, Boise, Idaho. The power company reported that during the 1987 January/February thirty-day billing cycle, the previous occupants had used 300 kilowatt hours of electricity. During the same billing cycle in 1988, the current occupants had used 712 kilowatt hours. The power company also reported the house at 2227 Ellis was equipped with a non-electric heating source and "McDonald" was listed on

the billing statement as the occupant of the house since January 1988. The power company also informed the officer that McAndrew was listed on a power bill in Cascade, Idaho, and had left Cascade without paying a $120 power bill.

The affidavit also related the officer's experience and training as a law enforcement officer. The officer stated he was knowledgeable about all aspects of growing marijuana. In particular, the officer noted "sexing" and "cloning" were sophisticated methods of growing and harvesting high-grade marijuana and that the presence of growing lights was consistent with the increase in power usage. The officer also noted he was unable to observe any external sources which would account for the great difference in power usage.

The magistrate examined the information in the affidavit and the application for a search warrant and concluded probable cause existed to issue a search warrant. The evidence found in the search resulted in McAndrew being charged with manufacturing a controlled substance. His motion to suppress evidence was denied and he was convicted by a jury. This appeal followed.

Although the district court upheld the search warrant under the *Leon* exception, the state's initial argument is that the judge should have upheld the magistrate's finding of probable cause for the issuance of the warrant. We will first address this issue. In order for a search warrant to be valid, it must be supported by probable cause. U.S. Const. Amend. IV; Idaho Const. Art. 1, § 17. When reviewing a magistrate's finding of probable cause, our duty is limited to determining whether the magistrate had a substantial basis for concluding probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983). On suppression questions, our review of probable cause is bifurcated. We defer to the lower court's findings of fact when supported by substantial evidence. However, we freely apply constitutional principles to the facts found. *See State v. Montague*, 114 Idaho

319, 756 P.2d 1083 (Ct.App.1988) (review of probable cause for arrest). Our analysis of probable cause is governed by the United States Supreme Court decision of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *State v. Lang, supra.* Under *Gates*, we must determine whether information received from an anonymous informant established probable cause under the "totality of the circumstances."

The *Gates* decision abandoned the two-prong test established in *Aguilar–Spinelli* in favor of the more traditional totality of the circumstances test. *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). However, we have held the *Aguilar–Spinelli* standard remains a useful first step in evaluating probable cause questions involving anonymous informants. *State v. Schaffer*, 107 Idaho 812, 693 P.2d 458 (Ct.App.1984). The *Aguilar–Spinelli* test requires the government to show the "veracity" of the informant and the "basis of his knowledge." Veracity can be established by the general credibility of the informant or through the reliability of the particular information provided. The basis of an informant's knowledge may be determined by describing the underlying circumstances from which the informant received his information or by the inclusion of such detail the information becomes self-verifying. *State v. Schaffer, supra.*

Therefore, "[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

In the instant case, we begin with the informant's veracity. The record contains no information relating to the informant's past reliability. However, the informant's detailed account of McAndrew's marijuana growing operation supports the informant's present credibility. The informant accurately described McAndrew's physical appearance, house, car, length of time lived at the house, and the esoteric fact he was using a false name for purpose of his utility bills. Moreover, each of these facts was independently corroborated by the officer. In *Gates*, the United States Supreme Court held that when an informant is right about certain things, he is more likely right about other facts, including the alleged illegal activity. 462 U.S. at 244, 103 S.Ct. at 2335. Accordingly, we hold that the independent corroboration of these facts provided a substantial basis for believing the informant's statements were true.

We now turn to the informant's basis of knowledge. As noted above, the informant gave the police a number of detailed facts, including some innocent and easily obtained facts. However, not all of the facts could be easily obtained by anyone who knew McAndrew. Obviously, direct communications between McAndrew and the informant were the purported source of some details of McAndrew's illegal activities. The tip about the false name which McAndrew was using on his utility bill was of a character likely obtained only from McAndrew himself or from someone familiar with his marijuana growing operation. "If the informant had access to accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information [about] the ... alleged illegal activities." *Id.* at 245, 103 S.Ct. at 2336. Therefore, the officer's corroboration of details, such as these, suggest the informant did in fact receive the information from McAndrew.

Under our analysis we believe the test established in *Gates* and *Lang* has been satisfied. Accordingly, we hold the magistrate who issued the warrant had a substantial basis for believing probable cause existed to search McAndrew's house. For these reasons, we uphold the district court's decision denying the motion to suppress. Accordingly, we affirm the judgment of conviction.

GRANATA, J., pro tem., concurs.

BURNETT, Judge,* specially concurring.

I respectfully disagree with the lead opinion's conclusion that the magistrate had a substantial basis for determining the existence of probable cause. The only information linking McAndrew to criminal activity was attributable solely to an anonymous informant, whose reliability was unknown and whose allegations were not self-authenticating. This information was supplemented by a few non-incriminating facts, which were corroborated by the investigating officer. These facts, however, simply demonstrated that the anonymous informant possessed knowledge of McAndrew's personal and financial life; they had no nexus to the allegation that McAndrew was growing marijuana.

The lead opinion attempts to construct such a nexus by suggesting that if non-incriminating facts furnished by an anonymous informant are corroborated, then the uncorroborated allegations of criminal activity may be regarded as more likely to be true. The danger inherent in this approach is manifest. It would allow search warrants to be issued upon uncorroborated assertions by anonymous informants, if those assertions are accompanied by an investigating officer's corroboration of a few unrelated, innocuous facts. Here, the corroboration was limited to non-incriminating information. Although the investigating officer did present data showing an increase in electrical power usage, these date were not accompanied—so far as the record indicates—by information concerning normal power usage or the quantity of increase that would be indicative of marijuana cultivation.

Accordingly, I would conclude that the search warrant in this case was issued without a *substantial* basis for concluding that probable cause existed. However, I also believe, as did the district court, that the evidence presented to the magistrate was sufficient to support the investigating officer's good-faith reliance upon the warrant after it had been issued. Accordingly, under the *Leon* exception to the exclusionary rule, the evidence subsequently seized under the warrant could not be suppressed.

---

* Judge Burnett's concurring opinion was prepared prior to his resignation on July 16, 1990.