4 P.3d 1122

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Stephen Gary CARLSON, Defendant-Appellant.**

**State of Idaho, Plaintiff-Respondent,**

v.

**Holly Helen Carlson, Defendant-Appellant.**

**State of Idaho, Plaintiff-Respondent,**

v.

**James Charles Carlson, Defendant-Appellant.**

Nos. 24639, 24640, 24641.

Court of Appeals of Idaho.

Feb. 29, 2000.

Rehearing Denied May 23, 2000.

Review Denied July 31, 2000.

Marilyn Paul, Jerome County Public Defender, Jerome, for appellants.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

PERRY, Chief Judge.

These cases were consolidated for appeal. Stephen Gary Carlson appeals from a judgment of conviction entered upon his guilty plea to possession of a controlled substance with the intent to deliver, I.C. § 37–2732(a)(1)(B), and trafficking in marijuana, I.C. § 37–2732B(a)(1)(B). Holly Helen Carlson appeals from a judgment of conviction entered upon her guilty plea to manufacture of a controlled substance where children are present. I.C. § 37–2737A. James Charles Carlson appeals from a judgment of conviction entered upon his guilty plea to possession of a controlled substance with the intent to deliver. I.C. § 37–2732(a)(1)(B). The Carlsons each reserved their right to appeal from the district court's denial of their motions to suppress. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

A search warrant affidavit was presented to a magistrate in support of an application for a search warrant. After reviewing the affidavit, a magistrate found probable cause that evidence of a crime would be found at the Carlsons' residence and issued a search warrant for the Carlsons' property. The warrant authorized the seizure of marijuana, cultivation equipment, records or instruments of illegal drug sales or possession, and paraphernalia.

The search of the residence yielded, among other things, approximately ninety-one cannabis plants of differing sizes, processed marijuana, methamphetamine, and paraphernalia. The Carlsons were each subsequently charged with various violations of the Uniform Controlled Substances Act, I.C. §§ 37-2701 to -2751. The Carlsons, through common defense counsel, filed motions to suppress the evidence seized in the search of their property which the district court denied after a hearing.

Subsequently, the Carlsons each entered I.C.R. 11 conditional guilty pleas reserving their right to appeal the denial of the motions to suppress. Stephen Carlson pled guilty to possession of marijuana with the intent to deliver and trafficking in marijuana. Holly Carlson pled guilty to manufacturing a controlled substance while children are present. James Carlson pled guilty to possession of marijuana with intent to deliver. The Carlsons appeal.

## II.

## ANALYSIS

The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 17 of the Idaho Constitution is virtually identical to the Fourth Amendment, except that "oath or affirmation" is termed "affidavit." The Carlsons allege that both constitutional provisions were violated here. However, they do not contend that Article I, Section 17 of the Idaho Constitution provides greater protection than its Fourth Amendment counterpart. Because the Carlsons have not presented any cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment with respect to the search involved here, we will rely upon judicial interpretation of the Fourth Amendment in rendering our decision.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). The Carlsons do not dispute the district court's factual findings.

The Carlsons challenge the district court's denial of their motion to suppress. They allege that the information contained in the affidavit in support of the application for the search warrant was unreliable, stale, and, when taken as a whole, otherwise insufficient to amount to probable cause. Thus, according to the Carlsons, the district court erred when it determined that probable cause supported the issuance of the search warrant.

When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); *State v. Josephson,* 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In this evaluation, great deference is paid to the magistrate's determination. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 546; *State v. Wilson,* 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct.App.1997). The test for reviewing the magistrate's action is whether he

or she abused his or her discretion in finding that probable cause existed. *State v. Holman,* 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct.App.1985).

■ When determining whether probable cause exists:

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. *See also Wilson,* 130 Idaho at 215, 938 P.2d at 1253. If a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly,* 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct.App.1984).

The affidavit presented to the magistrate in support of the application of the search warrant in this case stated:

On 09–22–97 the affiant was contacted by an informant, concerning the possession and cultivation of marijuana at the above described location. The informant stated that he had personally witnessed the defendant, Steve Carlson, growing marijuana, harvesting it, drying it, and storing it at his home. A description of the property layout, and the home itself was given to the affiant over the phone. This was corroborated by Deputy Dunsbergen during the early morning hours of 09–23–97 when he developed a sketch of the home and property at the request of the affiant. The informant stated that about 14 days prior he had personally observed growing marijuana plants on the property, harvested and drying marijuana plants hanging in the garage.

The informant stated that his desire to remain anonymous was from his fear that the defendant would retaliate against him, stating that the defendant had a number of weapons in his home, and that he used "crank" and was violent.

At bout [sic] 0900 hrs. on 09–23–97 I spoke with Detective Rinehart of the Twin Falls Police concerning this defendant, as he has a business in the city of Twin Falls, ID. Det. Rinehart stated that he had been told by another Detective that the defendant was known by the street name of "Pop" and that he was suspected illegal [sic] manufacturing of suppression devices for firearms at his welding shop in Twin Falls.

In discussing this investigation with Sheriff Weaver and Undersheriff Roberts, Undersheriff Roberts stated that some time ago she had been involved in a call concerning a juvenile male who had possession of marijuana and claimed that it was obtained from another male juvenile that lived at the above described home. This matched information given the affiant by the informant that the defendant had a teenaged son in the home along with a wife and another child of about one year old.

Undersheriff Roberts stated that in that earlier case, she had learned that allegedly this young man living at the home of the defendant was allegedly selling marijuana and having others selling for him, that she had heard from another person that their son owed $500.00 to the boy living in the defendant's home for marijuana.

On 9–23–97 at about 0930 hrs., the affiant and Undersheriff Roberts drove to the defendant's home in Jerome County. On the mail box I saw that there was [sic] the names of "Pop" and "Bugg" rather than any proper names on the mail box in front of the home. Also, from examination of the exterior layout, the informant information seemed detailed, even including a pen for ducks and geese behind the home.

On 10–01–97 the affiant spoke with the informant again. He stated that as of Saturday 09–27–97, he observed in the defendant's garage there was [sic] a large growing marijuana plant, and plastic hanging in the garage to shelter the plant.

**A. Nexus**

■ Initially, we address the Carlsons' assertion that information concerning Stephen Carlson's alleged manufacturing of firearm suppression devices in Twin Falls should have been stricken from the affidavit and not considered by the magistrate because that

allegation shows no nexus between criminal activity and the residence for which the search warrant was sought. Assertions in the affidavit must establish a sufficient nexus between criminal activity, the things to be seized, and the place to be searched to lead to the issuance of a warrant. *State v. Sorbel*, 124 Idaho 275, 278, 858 P.2d 814, 817 (Ct. App.1993). We agree that no nexus was established between the alleged illegal activity—manufacturing suppression devices for firearms at a welding shop in Twin Falls— and the residence for which the search warrant was sought. Thus, this information must be stricken from the affidavit. Therefore, this information was improperly before the magistrate and this Court will not consider that portion of the affidavit in its analysis.

**B. Reliability**

 The Carlsons argue that the hearsay information contained within the affidavit was not reliable and, therefore, the magistrate impermissibly considered that information in its determination of probable cause. The evidence offered in support of a warrant may include hearsay, provided there is a substantial basis for crediting the hearsay. *State v. Wengren*, 126 Idaho 662, 666, 889 P.2d 96, 100 (Ct.App.1995). Where the warrant application is based in part upon information provided by an informant, factors supporting probable cause may include facts in the affidavit indicating the reliability of the informant and the basis of the informant's knowledge. *State v. Chapple*, 124 Idaho 525, 527, 861 P.2d 95, 97 (Ct.App.1993). The reliability of the information supplied by an informant is highly relevant in determining the value of the hearsay information supplied by that informant and, thus, in making a determination of probable cause. *State v. Molina*, 125 Idaho 637, 640, 873 P.2d 891, 894 (Ct. App.1993).

 In this case, an informant told police of an ongoing marijuana operation at the Carlson residence. The informant reported personally observing, on or about September 8, 1997, marijuana being grown, harvested, dried, and stored in the Carlsons' home. Subsequently, on September 27, 1997, the informant observed a large growing marijuana plant and plastic hanging in the Carlsons' garage to shelter the plant. Such personal observations are considered one of the strongest possible indications of basis of knowledge. *State v. Lindsey*, 115 Idaho 184, 186, 765 P.2d 695, 697 (Ct.App.1988); *State v. Vargovich*, 113 Idaho 354, 356, 743 P.2d 1007, 1009 (Ct.App.1987).

 Additionally, information may be sufficiently reliable to support a probable cause finding if the information is corroborated by independent evidence. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959). Here, the informant told the officer that, based on his observations of growing, harvesting, drying, and stored marijuana, that an ongoing marijuana operation was in place at the residence. Furthermore, the informant stated that Stephen Carlson's teenage son lived at the residence.

After receiving the informant's information, the officer contacted other law enforcement officers who provided a variety of information. Those officers stated that a young man living at the Carlson home had allegedly sold marijuana in the past. This information provided independent evidence of narcotics activity by a teenage male who lived at the residence. Moreover, information supplied by the informant included the layout of the property and the home itself. This information was verified when police officers drove by the address provided by the informant and confirmed the information regarding the exterior layout of the property, including the location of animal pens behind the home.

The Carlsons also assert that the informant had a grievance against them and, thus, a motive to fabricate the information provided to the officer.[1] The Carlsons allege that, because the magistrate was unaware of this

---

1. Following sentencing, the Carlsons apparently moved to withdraw their guilty pleas, and to suppress the results of the search and dismiss the charges. As a result, the district court held several hearings. Initially, we note that the record on appeal indicates that the hearing on the Carlsons' motions was held prior to the filing of the written motions. Additionally, the record on appeal does not contain these written motions. The district court eventually denied these motions. The denial of these motions is not an issue on appeal.

grievance, it could not have made a proper determination regarding the reliability of the informant. The record reveals that the district court held several *in camera* hearings after the Carlsons were sentenced. During one of the hearings, the officer who submitted the affidavit in support of the search warrant application testified that although he "thought" the informant may have harbored a general animosity toward the Carlsons, the informant did not have a specific grievance against them. The district court also conducted an *ex parte, in camera* hearing wherein the informant was interviewed by the court. According to the district court, the informant stated that there was no grievance and that he or she was simply a person wanting to report a crime because he or she did not like criminal activity. Thus, there is no support in the record for the Carlsons' assertion, and the Carlsons have failed to show how the absence of this information would have affected the magistrate's determination.

The Carlsons further contend that the informant had a motive to fabricate his or her statement to the officer. They assert that because the magistrate was not advised that the informant was offered, and accepted, a reward for his or her information, the magistrate could not properly assess the informant's credibility. The record indicates that the officer told the informant, on October 1, that "there could be some monetary considerations." The informant did not solicit the information regarding any possible reward. Furthermore, the informant was made aware of the possibility of a reward well after his or her first conversation with the officer on September 22. Based on the record before this Court, it does not appear that the information regarding a reward was a motivating factor in the informant's statements because the informant did not solicit that information from the officer and was not aware of it at the time of his or her initial statement. Therefore, the Carlsons' assertion that a reward was a motive for the informant to fabricate his or her statement is not supported by the record on appeal. Based on the foregoing, we hold that the magistrate properly relied upon the hearsay information in its probable cause determination.

## C. Staleness

Next, the Carlsons argue that the information in the affidavit was stale, as it was based upon an informant's reported observations which occurred approximately twenty-four days prior to the affidavit being subscribed. The Carlsons assert that, because there was no continuing observation of the home or location, the informant's information was stale when finally acted upon by the police.

The staleness of information regarding the presence of items in a certain place depends upon the nature of the factual scenario involved. *State v. Turnbeaugh,* 110 Idaho 11, 13, 713 P.2d 447, 449 (Ct.App.1985). In a determination of whether information contained within a search warrant affidavit is stale, there exists no magical number of days within which information is fresh and after which the information becomes stale. The question must be resolved in light of the circumstances of each case. *State v. Gomez,* 101 Idaho 802, 808, 623 P.2d 110, 116 (1980). An important factor in a staleness analysis is the nature of the criminal conduct. If the affidavit recounts criminal activities of a protracted or continuous nature, a time delay in the sequence of events is of less significance. *Id.* Certain nefarious activities, such as narcotics trafficking, are continuing in nature and, as a result, are less likely to become stale even over an extended period of time. *See Turnbeaugh,* 110 Idaho at 14, 713 P.2d at 450.

In the case at bar, there was an approximate lapse of twenty-four days from the time of the informant's initial observations and the issuance of the search warrant. The informant's information detailed a marijuana operation—a continuing criminal enterprise. Furthermore, the informant's second report regarding the observation of a marijuana plant in the garage was based upon an incident approximately three days prior to the issuance of the search warrant and approximately twenty days after his or her initial observations. The implication from the informant's report is that the marijuana operation continued in the interim twenty-four-day period. Under the circumstances of this case, we hold that the lapse of time between the informant's initial observation

and the swearing of the affidavit in support of the application of the search warrant did not render the information stale. Thus, this information was also properly relied upon by the magistrate in its determination of probable cause.

## D. Probable Cause

We have determined that the information contained in the affidavit, absent that which was necessarily stricken, was neither unreliable nor stale. Therefore, we next turn to the Carlsons' contention that the affidavit was insufficient to provide the magistrate with probable cause to issue the search warrant.

■ Whether probable cause exists to support the issuance of a search warrant is determined by the magistrate from the facts set forth in affidavits and from recorded testimony in support of the application for the warrant. I.C.R. 41(c); *Josephson*, 123 Idaho at 792, 852 P.2d at 1389; *State v. Hagedorn*, 129 Idaho 155, 160, 922 P.2d 1081, 1086 (Ct.App.1996). In dealing with probable cause, the Court is concerned with probabilities. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949). "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men [and women], not legal technicians, act." *Id.* Probable cause is a fluid concept, "turning on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329, 76 L.Ed.2d at 544.

Idaho Code Section 37–2732B states that any person who knowingly possesses twenty-five marijuana plants or more, is guilty of the felony of trafficking in marijuana. Additionally, I.C. § 37–2732(a)(1)(A) makes the manufacture of marijuana, a schedule I substance, a felony. The affidavit contained reliable, nonstale information that an informant had observed growing, harvested, drying and stored marijuana. Thus, a practical reading of the evidence in the affidavit supplied probable cause to the magistrate that a crime was being committed on the property to be searched. Therefore, the district court properly denied the Carlsons' motions to suppress

on the basis that the magistrate lacked probable cause to issue the search warrant.[2]

## III.

### CONCLUSION

We conclude that the hearsay information contained in the affidavit in support of the issuance of a search warrant was neither unreliable or stale in this case. Therefore, we hold that the affidavit provided the magistrate a substantial basis for concluding that probable cause existed before issuing the search warrant. Accordingly, the district court's orders denying the Carlsons' motions to suppress are affirmed.

Judge Pro Tem SWANSTROM, concurs.

Judge LANSING, Dissenting.

I respectfully dissent. In my view, the majority opinion ignores several features of the warrant affidavit which, when examined in light of controlling constitutional standards, render the affidavit insufficient to show probable cause. These important elements include the anonymity of the informant, the omission of the age of some of the information provided by an officer, and the inclusion of unsubstantiated rumor and suspicion.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court adopted a "totality of the circumstances" test for the review of a magistrate's finding of probable cause. Prior to *Gates*, two United States Supreme Court decisions, *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), mandated a more restrictive two-pronged test in cases where the warrant application rested upon hearsay information from an informant. This test required that the government show the veracity or reliability of the informant and the basis of the informant's knowledge. *Spinelli*, 393 U.S. at 413, 89 S.Ct. at 587, 21 L.Ed.2d

---

**2.** On appeal, the Carlsons cite the Court to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). However, there is no *Franks* motion contained within the record on appeal. Therefore, we will not consider an argument based on *Franks* in any context other than how it relates to the reliability of the hearsay information contained in the affidavit.

at 641; *Aguilar*, 378 U.S. at 113–115, 84 S.Ct. at 1513–1514, 12 L.Ed.2d at 727–729. The veracity of the statements could be demonstrated either through the general credibility of the informant or through the reliability of the specific information provided. The basis of the informant's knowledge could be shown either directly, by a statement describing the circumstances under which the informant obtained his or her information, or indirectly, by including enough detail that the information in the report became self-verifying. *Id.; State v. Chapple*, 124 Idaho 525, 528, 861 P.2d 95, 98 (Ct.App.1993). Although the "totality of the circumstances" test of *Gates* replaced the *Aguilar–Spinelli* inquiry, the two-pronged test remains "highly relevant in determining the value of [an informant's] report." *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543. Thus, this Court has applied the *Aguilar–Spinelli* inquiry as "a useful first step in evaluating probable cause where the information is derived, at least in part, from an undisclosed informant." *State v. Schaffer*, 107 Idaho 812, 817, 693 P.2d 458, 463 (Ct.App.1984). *See also State v. Peterson*, 133 Idaho 44, 981 P.2d 1154 (Ct.App.1999); *State v. Wengren*, 126 Idaho 662, 667, 889 P.2d 96, 101 (Ct.App. 1995); *Chapple, supra; State v. McAndrew*, 118 Idaho 132, 134, 795 P.2d 26, 28 (Ct.App. 1990); *State v. Vargovich*, 113 Idaho 354, 355–56, 743 P.2d 1007, 1008–09 (Ct.App. 1987).

I readily agree with the majority opinion that the "basis of knowledge" prong is satisfied in the present case, for Sergeant Chatterton's affidavit indicates that the informant claimed to have personally observed marijuana in the Carlson residence. However, there is a complete absence of information to satisfy the veracity prong, i.e., to show that the informant was a credible source. So far as the affidavit reveals, the informant provided the tip anonymously. There is no indication in the affidavit that Sergeant Chatterton knew the identity of the informant, that the police had previously received truthful information from the informant, or that Sergeant Chatterton had any reason to believe the informant to be reliable and credible. Hence, the informant in this case must be viewed as anonymous and lacking any presumption of reliability.

The lack of any showing of the informant's reliability requires an examination of the affidavit to determine whether information from other sources corroborates the informant's report of a marijuana growing operation or otherwise independently provides probable cause for the warrant. The affidavit states that police officers confirmed the informant's description of the exterior layout of the Carlson property. However, so far as can be discerned from the affidavit, all of the descriptive information could be observed from the street by any passerby, and thus the accuracy of the informant's description of the exterior details did not tend to confirm that the informant had been inside the Carlson home or garage as claimed. The details that were corroborated were innocuous and not indicative of illegal behavior.

The information from Undersheriff Roberts indicated that "some time ago" she had been involved in a case in which a juvenile suspect claimed that the marijuana in his possession had been obtained from a juvenile male who lived at the Carlson address. Undersheriff Roberts also reported that she had heard from another boy's parent that the boy owed $500 to the juvenile living in the Carlsons' home for the purchase of marijuana. This information might have been sufficient to provide probable cause if there had been some indication that the information was current enough to be relevant. The term "some time ago" implies that the event did not occur in the immediate past. It could indicate a time frame from a few weeks to several years ago. To satisfy the constitutional probable cause standard, evidence must create probable cause for the belief that the items sought are at the place to be searched "at the time the search warrant is requested." *Josephson*, 123 Idaho at 794, 852 P.2d at 1391 (quoting *State v. Gomez*, 101 Idaho 802, 808, 623 P.2d 110, 116 (1980)). Information which, through the passage of time, has grown too stale to be relevant will not satisfy this standard. *See Josephson*, 123 Idaho at 794–95, 852 P.2d at 1391–92 (holding that the discovery of marijuana and paraphernalia during a search of the defendant's garbage that reportedly occurred one month before the application for the warrant was too stale to provide probable cause to

believe marijuana would be found in the defendant's house.) I acknowledge that information which indicates a continuous criminal activity, such as drug trafficking, does not become stale as rapidly as information suggesting sporadic or occasional illegal acts. *Josephson*, 123 Idaho at 794, 852 P.2d at 1391; *State v. Thompson*, 113 Idaho 466, 479 n. 10, 745 P.2d 1087, 1100 n. 10 (Ct.App. 1987), *rev'd in part on other grounds*, 114 Idaho 746, 760 P.2d 1162 (1988). Nonetheless, as our Supreme Court stated in *State v. Oropeza*, 97 Idaho 387, 392, 545 P.2d 475, 480 (1976), with respect to a reported drug transaction, "some particularity as to time must be made so as to enable the magistrate to make his determination of *present* probable cause for the issuance of the search warrant." Here, the complete absence of *any* indication of the age of the information severely limits its probative value.

The remaining information reported in Sergeant Chatterton's affidavit was mere unsubstantiated rumor or suspicion bearing no indicia of accuracy. The United States Supreme Court has said that "just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient." *Spinelli*, 393 U.S. at 418–419, 89 S.Ct. at 590, 21 L.Ed.2d at 645. Hence, Sergeant Chatterton's affidavit contained neither information demonstrating the unnamed informant's veracity nor any creditable, demonstrably nonstale information tending to corroborate the informant's allegations.

I find this case indistinguishable from others where the Idaho appellate courts have held that a tip from an anonymous informant, without significant corroboration, is insufficient to establish probable cause. For example, in *Schaffer, supra*, this Court held that probable cause was not established by evidence that the sheriff had received two telephone calls from an anonymous tipster asserting that the defendant was growing marijuana in a greenhouse, the defendant's family was rumored to be dealing in marijuana, and the sheriff had confirmed that the home had a greenhouse which appeared to contain tall plants but could not discern whether the plants were marijuana. Similar-

ly, in *Josephson, supra*, the Idaho Supreme Court held that probable cause was not demonstrated where an anonymous telephone caller reported seeing marijuana plants through the open door of an outbuilding on the defendant's property and stated that the defendant received a large number of visitors at his residence. The warrant affidavit also indicated that, one month previously, officers searching the defendant's garbage had found marijuana cigarette butts, leftover stems, a bag with marijuana residue, and an empty pack of rolling papers.

More recently, we considered an affidavit that related an unnamed informant's claim that the informant had observed paraphernalia in the defendant's house, had been told that there were marijuana plants upstairs, and had observed a small plant, resembling a tomato, growing upstairs in the house. The affidavit also related that an officer had personally observed lights on all night in the upper story of the defendant's house. We concluded that the evidence did not demonstrate probable cause for a search warrant. *State v. Turpin*, 129 Idaho 748, 932 P.2d 376 (Ct.App.1997).

As in *Schaffer, Josephson* and *Turpin*, the anonymous informant's tip here was insufficiently supported by evidence of the informant's veracity or corroborating investigation to support a finding of probable cause. Aside from the informant's allegations, the affidavit presented only rumor, confirmation of the informant's description of innocent details about the defendants' residence that could be observed from outside the property, and information about alleged marijuana sales that was of unspecified age and therefore of unknown relevance. This information did not provide a substantial basis for a finding of probable cause. Therefore, in my view, the defendants' motions for suppression of the evidence found in execution of the warrant should have been granted.