87 P.3d 967

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Don L. PATTERSON, Defendant–Appellant.**

**No. 28724.**

Court of Appeals of Idaho.

Dec. 31, 2003.

Review Denied April 12, 2004.

Andrew Parnes, Ketchum, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHWARTZMAN, Judge Pro Tem.

Don L. Patterson appeals from his felony conviction for possession of marijuana. Specifically, Patterson challenges the district court's denial of his motion to suppress. We affirm.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

An investigation into marijuana trafficking and money laundering led to the issuance of a series of search warrants for the financial records and property of Patterson. The first two affidavits, authored by Special Agent Nathan Corder, led to warrants to search and seize Patterson's bank records at two different banks.[1] Their contents were summarized as follows by the district court:

> In November 1997, Detective Craig Lewis, of the Maricopa county Sheriff's Office in Phoenix, Arizona, sent a report to the Idaho Department of Law Enforcement, Criminal Investigations Bureau. Det. Lewis therein reported that he was investigating Israel Durante Molinar ("Molinar"), a "known marijuana trafficker." In the course of that investigation, Det. Lewis had observed a black Dodge pickup truck parked at Molinar's residence, which

1. The bank records affidavits, each some nineteen pages in length and covering sixty-two separate paragraphs worth of material, were substantially identical except for designating different banks as their respective subjects.

he found was registered in Defendant's name.

Det. Lewis had collected a title transfer application showing that on August 1, 1997, Molinar applied to transfer the pickup truck from Defendant's name to his own. Det. Lewis had also procured a bill of sale dated March 21, 1997, by which Defendant purportedly sold the pickup to Molinar.

According to a confidential informant reporting to Det. Lewis ("Arizona C.I."), Molinar did not in fact purchase the pickup truck from Defendant, but instead received it as payment for a drug debt.

Det. Lewis's report said that the Arizona C.I. eventually told Molinar of the ongoing investigation, which prompted Molinar to flee Arizona and thereby defeat the Maricopa County investigation.

Special Agent Corder's February 25, 1999, affidavit failed to disclose this fact. . . .

Special Agent Corder's omission of any reference to the Arizona C.I.'s conduct compromising the Maricopa County investigation is central to Defendant's motion to suppress.

Special Agent Corder's February 25, 1999 affidavits continue on to say that on January 12, 1998, Detective Robinson, of the Idaho Department of Law Enforcement, determined from Idaho's certified vehicle title records that on July 12, 1996, a black 1995 Dodge pickup truck was purchased by Don and Mary Patterson of 552 2nd Avenue East, Twin Falls. Mary Patterson is Defendant's mother's name, and this is Defendants' parents' permanent address. It is unclear whether the Don Patterson listed on the vehicle registry is Defendant or Defendant's father, whose name is Donald L. Patterson. Defendant has lived at, and sometimes lists his address as, 552 2nd Avenue East, Twin Falls.

On January 26, 1999, special Agent Corder spoke with another confidential informant ("Idaho C.I.") who said that he/she had seen Defendant sell marijuana. The Idaho C.I. told Special Agent Corder that Defendant kept marijuana in the "shop" behind Defendant's house (located at 254 Sidney, Twin Falls). The Idaho C.I. further stated that when Defendant makes trips to California to buy merchandise for his store, D & L Discounts (located at 628 North Main Twin Falls), Defendant stops in Nevada to pick up narcotics.

On February 3, 1999, Jeanine Lane, Idaho State Tax Commission Specialist, told Special Agent Corder that the Idaho Tax Commission has no record of Defendant collecting or paying sales tax from sales at D & L Discounts, and that there is no record of Defendant claiming or paying taxes on the income from D & L Discounts. On February 18, 1999, Jeanine Lane contacted Special Agent Corder again and reported that she went to D & L Discounts, made a purchase, and was charged sales tax, but noted that the Tax Commission does not list a tax number for D & L Discounts.[2] Further, she noticed a sign at D & L Discounts requiring checks to be made out to Don Patterson.

Special Agent Corder ascertained from a loan application provided him by the Con Paulos car dealership in Twin Falls that Defendant has a checking account at First Security Bank in Twin Falls. Special Agent Corder also determined from information provided him by a loan officer at First Security Bank that Defendant has a savings account at U.S. Bank.

Pursuant to this information, the magistrate issued two search warrants for Patterson's bank records at U.S. Bank and First Security Bank. Agent Corder then prepared a third affidavit in support of probable cause that contained the same facts as the first two affidavits and added an additional eighteen paragraphs of information gathered from the ongoing investigation. On the basis of this affidavit, the magistrate issued a warrant authorizing the installation of a pen register on Patterson's phone line. The pen register recorded an average of seventy-seven calls per day, both incoming and outgoing, from its installation on March 30 through May 28, 1999.

---

2. Subsequent affidavits indicate that Patterson provided the Idaho Tax Commission with a legiti- mate sales tax number under the partnership name of Wilding Sales.

On November 29, 1999, Agent Corder executed a fourth affidavit in support of probable cause. This affidavit contained the same information as the previous three affidavits, but included extensive additional information. The additional information consisted of a detailed history of Patterson's 1987 arrest for possession of cocaine, information about Patterson's involvement in a 1992 marijuana seizure in Tucson, Arizona, as well as the following information about the Arizona C.I.:

In Detective Lewis' reports, he said that during his investigation he had identified Durante Molinar as a multi-hundred pound marijuana trafficker through a confidential informant who has personally purchased up to two hundred (200) pounds of marijuana at a time. Detective Lewis' confidential informant told him that Durante Molinar has family in Mexico who grow marijuana on their ranch, and Durante Molinar smuggles large amounts of marijuana into the United States.

The fourth affidavit also contained a detailed analysis of Patterson's bank records, obtained pursuant to the first two search warrants. Based on his findings regarding Patterson's financial patterns, as well as the rest of the above-listed information, Agent Corder requested a search warrant for Patterson's power utility records so that he could undertake a debt-to-income ratio comparison. The magistrate also issued a search warrant for these records.

Agent Corder then executed fifth, sixth, and seventh affidavits in support of probable cause. These affidavits contained the facts expressed in the previous affidavits and included information culled from the power records seized pursuant to the fourth search warrant. The new information indicated that Patterson's claimed income was significantly lower than his expenditures. Pursuant to these affidavits, the magistrate issued warrants to search the premises of D & L Discounts, an automotive repair shop and Patterson's home. Assisted by a narcotics detection dog, the officers discovered approximately one pound of marijuana in the garage at Patterson's home and approximately $151,000 in currency at the automotive repair shop.

In sum, Patterson was the subject of a lengthy investigation into marijuana trafficking and money laundering. As investigators obtained information, they executed new affidavits in support of probable cause. The affidavits built on each other, with each subsequent document incorporating the facts of the preceding affidavits, adding the new information secured by the last warrant.

The state charged Patterson with one count of possession of marijuana with intent to deliver, four counts of tax evasion, and two counts of money laundering. After being bound over to district court, Patterson was arraigned and entered a plea of not guilty. Patterson then filed a motion to suppress all items seized pursuant to the bank records warrants on the ground that the warrants were invalid and the search therefore illegal. Patterson further moved to suppress all items seized pursuant to the subsequent search warrants because those warrants were issued in partial reliance on purportedly tainted items and information seized pursuant to the earlier warrants. Patterson also moved to suppress all items (notably the $151,000) seized at the automotive repair shop, alleging that "no probable cause or indication of ownership or control exists supporting a connection between those items and the Defendant."

The district court denied Patterson's motion to suppress. Patterson thereafter entered a conditional guilty plea to one felony count of possession of marijuana while preserving his right to appeal the denial of his suppression motion, and the other charges were dismissed.

## II.

## ANALYSIS

Patterson challenges whether the probable cause affidavits recklessly or intentionally omitted material information, and whether the search warrants for Patterson's bank records, power records, residence and businesses were supported by probable cause.

### A. Omission in the Affidavits

Patterson argues that Special Agent Corder intentionally or recklessly falsified or

omitted information from his affidavit, thereby invalidating the warrant. *See State v. Lindner*, 100 Idaho 37, 41, 592 P.2d 852, 856 (1979), adopting *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In particular, Patterson alleges that Agent Corder omitted from his affidavits the fact that a confidential informant who provided information against Patterson two years before the warrants issued was no longer considered reliable by Arizona law enforcement to whom the C.I. had delivered his/her information.

▆▆▆ Our standard of review for analysis of the omission of information from a warrant affidavit is summarized as follows: Whether an omission from a warrant affidavit was merely negligent or an innocent mistake, or was made intentionally and recklessly, is a factual determination that we will not disturb on appeal unless it is clearly erroneous. Whether a misrepresentation is "material," however, is a question of law over which we exercise free review. Omitted information is material only if there is a substantial probability that, had the omitted information been presented, it would have altered the magistrate's finding of probable cause. *See State v. Peterson*, 133 Idaho 44, 48, 981 P.2d 1154, 1158 (Ct.App.1999).

Here, the critical question is whether the omitted information was material to the magistrate's finding of probable cause. The district court found that the Arizona C.I.'s information was but a footnote to the considerable body of information gathered by Special Agent Corder. The district court further concluded that, had the issuing magistrate known of the Arizona C.I.'s eventual disclosure to Molinar, he still would have found that the affidavit, in its totality, provided a substantial basis for concluding that probable cause existed. We agree.

▆▆▆ Patterson's contention that the magistrate would not have found probable cause had he known that the Arizona C.I. later compromised the Arizona Sheriff's investigation is unpersuasive. The reliability of a confidential informant is generally determined by looking at the C.I.'s veracity and basis of knowledge. *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct.App.

1997). That the informant later tipped off the suspect about the criminal investigation has little negative bearing on the informant's reliability *at the time* the information was first relayed to law enforcement and may even serve to bolster confidence in the C.I.'s prior information. We therefore uphold the district court's determination that omission of the Arizona C.I.'s subsequent disclosure was not material to the magistrate's finding of probable cause.

## B. Probable Cause

Upon review of whether a lower court properly issued a search warrant, we examine the information in the warrant affidavit to determine if the conclusion that probable cause existed had a substantial basis. *State v. Molina*, 125 Idaho 637, 639, 873 P.2d 891, 893 (Ct.App.1993). We accord great deference to the probable cause decision made by the lower court. *Id.* We accept the trial court's findings of fact that are supported by substantial evidence, but freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App.1999)

▆▆▆ Patterson had the burden of establishing that the issuance of a warrant was not supported by probable cause. *Wilson*, 130 Idaho at 215, 938 P.2d at 1253. A search warrant is appropriately issued if there is probable cause to believe that contraband or other evidence of a crime can be found at a particular location. *State v. Josephson*, 123 Idaho 790, 792–793, 852 P.2d 1387, 1389–1390 (1993); *Molina*, 125 Idaho at 639, 873 P.2d at 893. Probable cause is determined by examining the totality of the circumstances and making:

a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the court], including

the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Wilson*, 130 Idaho at 215, 938 P.2d at 1253 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)).

### 1. Reliability of Idaho informant

■ Patterson attacks the reliability of the Idaho C.I. The reliability of an anonymous informant can be demonstrated either through the general credibility of the C.I. or through the reliability of the specific information provided. *State v. Chapple*, 124 Idaho 525, 528, 861 P.2d 95, 98 (Ct.App.1993). Information may be sufficiently reliable to support a probable cause finding if the information is corroborated by independent evidence of incriminating details. *State v. Carlson*, 134 Idaho 471, 476–477, 4 P.3d 1122, 1127–1128 (Ct.App.2000). Assessment of the basis of a C.I.'s knowledge can be done by considering the underlying circumstances from which the informant received the information or by considering whether the informant's information is so detailed that it becomes self-verifying. *Molina*, 125 Idaho at 640, 873 P.2d at 894; *State v. McAndrew*, 118 Idaho 132, 134, 795 P.2d 26, 28 (Ct.App.1990). Personal observation by an informant is one of the strongest possible indications of a basis of knowledge. *State v. Vargovich*, 113 Idaho 354, 356, 743 P.2d 1007, 1009 (Ct.App. 1987).

Patterson argues that the affidavits do not explain the basis of the Idaho C.I.'s knowledge. Specifically, Patterson argues the affidavits do not provide information necessary to determine whether the C.I. is familiar enough with marijuana to be able to identify the substance. Patterson also argues that there is no evidence that the informant was, in fact, reliable. However, the detailed nature of the Idaho C.I.'s information with regard to where the marijuana was stored, and how it was sold, lends substantial credence to the C.I.'s reliability. The district court concluded that the Idaho C.I. was clearly a member of Patterson's community and was familiar with his illegal activities. We find no reason to disagree and hold that the magistrate did not improperly evaluate the Idaho C.I.'s information.

### 2. Bank records

■ As an initial matter, we note that the parties stipulated at the suppression hearing that Patterson had a privacy interest in his bank records. We therefore will assume, without deciding, that such an interest did exist for the purposes of this appeal. *But see United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (the Fourth Amendment does not prohibit the government from obtaining information voluntarily conveyed to a third party; bank records are business records of the bank, not a defendant's private papers); Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422 (1978) (striking balance between customer's right of privacy and the need of federal law enforcement agencies to obtain financial records pursuant to legitimate investigations).[3]

Extensive facts in support of probable cause for issuance of the bank records search warrants were presented to the magistrate. The affidavits described the affiant's training and expertise, included pages of facts thoroughly tracing the history of the ongoing investigation, and articulated the investigator's reasoning. Among other things, the affidavits detailed Patterson's association with suspected narcotics suppliers in two different states; his standard of living, including ownership of real property, residences and multiple vehicles, despite his low earnings, absence of debt and sporadic employment; first-hand accounts of Patterson's drug dealing protocol, including information as to the location of Patterson's marijuana cache; as well as various income tax irregu-

---

3. Although the RFPA was promulgated in response to *Miller*, it provides but limited protection to bank customers, particularly when their records are sought in furtherance of a legitimate investigation. Furthermore, even where financial records have been disclosed in violation of the Act, only civil penalties or injunctive relief can be awarded. Suppression of the records is not provided under the Act. *See generally* Richard Cordero, J.D., D.E.A., Ph.D., Annotation, *Construction and Application of Right to Financial Privacy Act of 1978*, 112 A.L.R. FED. 295 (1993).

larities. These facts all tend to indicate Patterson's involvement in criminal enterprise, together with a substantial probability that Patterson's bank records would contain evidence of income from illegal sources.[4]

■ Patterson argues that the affidavits contain "stale" information. In *Carlson*, 134 Idaho at 477, 4 P.3d at 1128, we described the issue of staleness thusly:

> The staleness of information regarding the presence of items in a certain place depends upon the nature of the factual scenario involved. *State v. Turnbeaugh*, 110 Idaho 11, 13, 713 P.2d 447, 449 (Ct. App.1985). In a determination of whether information contained within a search warrant affidavit is stale, there exists no magical number of days within which information is fresh and after which the information becomes stale. The question must be resolved in light of the circumstances of each case. *State v. Gomez*, 101 Idaho 802, 808, 623 P.2d 110, 116 (1980). An important factor in a staleness analysis is the nature of the criminal conduct. If the affidavit recounts criminal activities of a protracted or continuous nature, a time delay in the sequence of events is of less significance. *Id.* Certain nefarious activities, such as narcotics trafficking, are continuing in nature and, as a result, are less likely to become stale even over an extended period of time. *See Turnbeaugh*, 110 Idaho at 14, 713 P.2d at 450.

In short, information in a warrant affidavit is only stale if it fails to demonstrate a fair probability that the contraband or evidence to be seized would presently be found at the location to be searched. As this Court noted in *Carlson*, the sale of narcotics is continuous in nature. Furthermore, bank records are typically retained for extended periods of time. The Third Circuit Court of Appeals recently held that when the transactions at issue are of a continuous nature, and the items sought in the warrant are customarily kept for long periods of time, the potential staleness of information becomes less significant. *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars*

*and Fifty–Seven Cents*, 307 F.3d 137 (3d Cir.2002). We agree with this reasoning.

There was ample evidence in support of the magistrate's finding of probable cause regarding Patterson's bank records, and we therefore conclude that the district court correctly denied Patterson's motion to suppress the evidence found in his bank accounts.

### 3. Power records

■ The affidavit in support of probable cause to seize Patterson's power records contained the same extensive list of facts as the bank records affidavit, but also included the information gleaned from Patterson's bank records. Moreover, the scope of protection afforded by the Fourth Amendment of the United States Constitution and Article 1, § 17 of the Idaho Constitution does not even extend to power consumption records. *State v. Kluss*, 125 Idaho 14, 21, 867 P.2d 247, 254 (Ct.App.1993). As such, neither a warrant nor even a subpoena is required for a utility company to disclose such information. *Id.* There is no statutory or constitutional basis for the suppression of Patterson's power records. The district court properly denied Patterson's motion to suppress the information gleaned from these records.

### 4. Home and business

■ Patterson argues that the probable cause affidavits for his home and D & L Discounts must fail because they are based in part on evidence seized from the bank and power records. We have already concluded that the district court did not err in denying Patterson's suppression motions relating to both the bank and power records. The probable cause affidavits for the home and business addresses contained the same information previously discussed, together with additional information gleaned from Patterson's bank and power records and calculations about his income and expenditures between 1994 and 1998. Suffice it to say there was sufficient probable cause to support the magistrate's decision. Therefore, we will only address Patterson's contention that the

---

4. We do not imply that these affidavits, standing alone, would have been sufficient to authorize a

search of Patterson's real property at this stage of the investigation.

probable cause affidavit to search the automotive repair shop must fail because there was no substantial factual basis to conclude that this property belonged to Patterson.

Patterson bases his argument on the fact that the county property title records and property tax records list "Donald L. Patterson" as the owner of the shop. Complicating matters is the fact that Patterson and his father share the same name. The affidavits indicated that the title and tax records referred to Patterson's father, but the Idaho C.I. asserted that the shop belonged to the younger Patterson. Moreover, surveillance indicated that the occupant of the premises was the younger Patterson, and we conclude that the experience of Special Agent Corder lends additional support to the inference that narcotic traffickers often title property in others' names in order to avoid detection. We therefore hold that the warrant to search the automotive repair shop was appropriately issued, and that the district court did not err in denying Patterson's motion to suppress.

## III.

### CONCLUSION

The totality of circumstances in this case supports the findings of probable cause for issuance of the various search warrants. Patterson's association with suspected narcotics suppliers in two different states; his standard of living (including ownership of real property, residences, and multiple vehicles) despite his low earnings, absence of debt, and sporadic employment; the firsthand accounts of Patterson's drug dealing protocol (including information as to the location of Patterson's marijuana); as well as various income tax irregularities, all tend to indicate Patterson's involvement in criminal behavior. In addition, we hold that the search warrant affidavits did not contain an intentional or reckless omission of a material fact. Accordingly, the district court's denial of Patterson's motion to suppress and Patterson's judgment of conviction for felony possession of marijuana are affirmed.

Judge PERRY and Judge GUTIERREZ concur.